[No. B093767. Second Dist., Div. Four. Oct. 19, 1995.]

JENNIFER DONGHEE CHO, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CHO HUNG BANK et al., Real Parties in Interest.

## COUNSEL

Irwin M. Friedman and David Zweig for Petitioner.

No appearance for Respondent.

Graham & James, Stephen T. Owens, James B. Woodruff, Allen C. Kim, Elizabeth C. Moeller, J. W. Lee and Frederick H. Choi for Real Parties in Interest.

## OPINION

**EPSTEIN, J.**—The issue in this case is whether a law firm must be disqualified as counsel in a lawsuit after employing the retired judge who had presided over the action and had received ex parte confidences from the opposing party in the course of settlement conferences. We conclude that screening procedures are not sufficient to preserve public trust in the justice system in these circumstances and therefore the firm must be disqualified.

### FACTUAL AND PROCEDURAL SUMMARY

Petitioner is the plaintiff in an action entitled Cho v. Cho Hung Bank (Super. Ct. L.A. County, No. BC080299) (the action) pending in respondent court. This writ proceeding stems from the denial of petitioner's motion to disqualify the law firm of Graham & James, counsel for real party in interest Cho Hung Bank, after Eric E. Younger, the judge who had presided over the action, retired and joined Graham & James in an "of counsel" capacity.

Judge Younger was assigned to the action and held three settlement conferences at various stages of the proceedings. The petition for writ of

mandate states: "Petitioner's posture in the settlement conferences accordingly changed at such stages, not the least of which was disclosure of Petitioner's bottom line settlement." A declaration by David Zweig, counsel for petitioner, submitted in support of her motion to disqualify, stated that Judge Younger had been privy to confidences relating to the merits of petitioner's case. Mr. Zweig declared: "Before Judge Younger left the bench at the end of 1994, His Honor made effort to settle the case and held at least 3 settlement conferences. In separate conference, Judge Younger asked plaintiff's counsel to speak candidly about the strengths and weaknesses of plaintiff's case, to which counsel responded openly and divulged information to His Honor in confidence. No such information would have been divulged but for the fact that it was in a confidential setting." Irwin Friedman, another attorney for petitioner, declared that confidential information, including petitioner's " 'bottom line' settlement" had been divulged to Judge Younger in settlement conferences.

Judge Younger retired in late December 1994, with the action still pending. Graham & James substituted into the lawsuit as counsel for real party in interest Cho Hung Bank on February 17, 1995. Within the next few days, a partner at Graham & James, Stephen Owens, reviewed the court docket sheet and discovered for the first time that Judge Younger had presided over the case until his retirement. Mr. Owens had heard that Judge Younger was joining the firm, and he told the managing partner, Henry David, of Judge Younger's role in the action. After researching the issues, Graham & James decided to impose a " 'cone of silence' " around Judge Younger before he began his formal relationship with the firm. A memorandum was circulated throughout Graham & James directing all personnel that Judge Younger was not to be involved in the action in any way; that it was not to be discussed in his presence; that Judge Younger was not to discuss his role or any information he had obtained; and that he was not to have access to any files or written materials about the action.

Judge Younger began his work with Graham & James on March 1, 1995. Petitioner's attorney first learned of this from Jang W. Lee at a deposition on March 22, 1995. Mr. Lee is a former attorney for Cho Hung Bank, and is a real party in interest in these proceedings. On the same day that petitioner's counsel learned of Judge Younger's affiliation with Graham & James, a letter from that firm was delivered to the court and counsel in the action formally informing them of Judge Younger's relationship with that firm, and of the steps taken to screen him from any involvement in the action.

Petitioner moved to recuse or disqualify Graham & James in March 1995. In opposition to the motion, real party in interest Cho Hung Bank submitted

the declaration of Judge Younger, which stated that "While I did conduct settlement discussions in chambers with each side (in the other's absence), I do not believe I ever learned any confidential information from plaintiff; if I did, I certainly did not remember it for any period of time."[1]

The parties stipulated that Judge Dell (retired), sitting as a referee, would conduct an evidentiary hearing on the motion to disqualify. That hearing was not reported. Petitioner filed an evidentiary objection to the declaration by Judge Younger filed in opposition to the motion.

Judge Dell issued a written statement of decision, in which he reviewed the declarations submitted and the oral representations of Messrs. Zweig and Owens and Judge Younger. The oral representations were "treated with the same dignity and effect as sworn testimony." The statement of decision also reviewed three cases cited by the parties—*Flatt* v. *Superior Court* (1994) 9 Cal.4th 275 [36 Cal.Rptr.2d 537, 885 P.2d 950]; *Rosenfeld Construction Co.* v. *Superior Court* (1991) 235 Cal.App.3d 566 [286 Cal.Rptr. 609]; and *Higdon* v. *Superior Court* (1991) 227 Cal.App.3d 1667 [278 Cal.Rptr. 588].

Judge Dell made the following findings: "1. There was no concealment by Graham & James from plaintiff or the Court of Judge Younger's association with that firm; at most there was an inadvertent delay in notification which caused no prejudice to plaintiff. [¶] 2. The preponderance of evidence is that the Bank's initial contact with Graham & James relative to the *Cho* case commenced in February 1, 1995. [¶] 3. There is no likelihood that any information received by Eric Younger, at settlement conferences or otherwise, while presiding as a judge in the *Cho* case, will cause any detriment to plaintiff by virtue of Judge Younger's employment at Graham & James. [¶] 4. Appropriate screening procedures have been instituted by Graham & James to insure that Eric Younger will have no participation in the *Cho* case. [¶] 5. Judge Younger's role as 'of counsel' with Graham & James is that of a part-time employee, not a partner, and not a profit participant; the outcome of the *Cho* case will have no effect on his compensation." Based on these findings, the referee recommended that the motion to disqualify be denied.

The trial court adopted the referee's recommendations and denied the motion to disqualify Graham & James. Petitioner filed her petition for writ of mandate challenging this ruling on June 23, 1995. We issued an alternative writ, established a briefing schedule, and issued a stay of the trial in the action.

---

[1]The parties disagree on the application of Evidence Code section 703.5 to the declaration of Judge Younger. We need not and do not decide that issue. The declaration of Judge Younger does not negative the claim that significant confidences were revealed to him by counsel for petitioner. Because of this, his declaration, even if we were to consider it, would not change our conclusion.

## DISCUSSION

■ This case presents an issue of first impression in California— whether a law firm must be disqualified when it employs a former judge who in his official capacity received ex parte confidences, bearing on the merits of a lawsuit over which he was presiding, from an adverse party in the identical litigation in which the motion to disqualify is brought. We conclude that the firm must be disqualified.

■ We first dispose of a procedural issue. The parties dispute the appropriate standard of appellate review. Real party in interest Cho Hung Bank urges us to apply the abuse of discretion standard on the ground that we may not substitute our judgment for the trial court's resolution of disputed factual issues. While this is a correct statement of the accepted rule (see *Rosenfeld Construction Co.* v. *Superior Court, supra,* 235 Cal.App.3d at pp. 572-573; *Higdon* v. *Superior Court, supra,* 227 Cal.App.3d at p. 1670), the problem with its application to this case is that the referee made no finding on the only factual dispute identified by the parties: whether Judge Younger received confidences from petitioner during settlement conferences. Where there are no disputed factual issues, we independently review the trial court's determination as a question of law. (See *Moomjian* v. *Zolin* (1993) 12 Cal.App.4th 1606, 1612 [16 Cal.Rptr.2d 335].)

■ The parties acknowledge that Judge Younger is disqualified from participating in the action by virtue of his role as judge. There is no California rule of professional conduct which governs the issue of disqualification of Graham & James. Petitioner urges us to adopt the "substantial relationship" test applied in *Rosenfeld*. Real party in interest Cho Hung Bank argues that we should apply the analysis employed by the court in *Higdon*. As we shall explain, neither analysis resolves the issues presented here.

The reported decision closest to ours is *Higdon* v. *Superior Court, supra,* 227 Cal.App.3d 1667. In that case, a court commissioner resigned and joined a law firm representing a party to a marital dissolution action on which he had heard contested matters. There was no indication that the commissioner had been party to confidences divulged by either side in the case.

The *Higdon* court began its analysis with a review of the authority under which disqualification may be ordered. "A trial court's authority to order disqualification of counsel is found at Code of Civil Procedure section 128, subdivision (a)(5), which provides that the court shall have the power to 'control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding

before it, in every matter pertaining thereto.' [Citations.] [¶] Real parties rely upon an appearance of impropriety. Indeed, '[J]ustice must satisfy the appearance of justice.' (*Offutt* v. *United States* (1954) 348 U.S. 11, 14 [99 L.Ed. 11, 16, 75 S.Ct. 11].)" (227 Cal.App.3d at p. 1671.)

The *Higdon* court ruled that absent consent by the opposing party, the former commissioner was disqualified from participating in the case as an attorney under the rationale of rule 1.12(a) of the American Bar Association Model Rules of Professional Conduct. That rule provides: "[A] lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk to such a person, unless all parties to the proceeding consent after consultation."

Turning to the question whether the former commissioner's firm must be disqualified, the court concluded: ". . . no conflict of interest is even alleged here; rather the appearance of impropriety is asserted as the sole basis supporting recusal of Thomas's firm. *Except for authorized ex parte matters* and instances of unethical behavior, a judge's role in a court proceeding does not present the opportunity for confidentiality with a party. (See Cal. Code of Jud. Conduct, canon 3.) Nonetheless, the parties' and the public's perception of impropriety needs to be alleviated by a process which assures that neither the former judge nor his law firm has or will receive an unfair advantage. Screening serves this purpose. A trial court hearing a recusal motion thus must look beyond the mere allegation of appearance of impropriety to determine whether appropriate screening has occurred and whether screening can effectively continue to protect against the former judge's participation." (227 Cal.App.3d at p. 1680, italics added.) The court concluded that the law firm should be given an opportunity to establish that the former commissioner, now attorney, had been effectively screened from the case. If that requirement was satisfied, the *Higdon* court directed the trial court to deny the motion for recusal of the firm. (*Id.* at pp. 1680-1681.)

In reaching this conclusion, the *Higdon* court considered another provision of rule 1.12 of the American Bar Association Model Rules of Professional Conduct, which addresses recusal of a law firm employing a former judicial officer: " '(c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless: [¶] (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and [¶] (2) written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.' " (227 Cal.App.3d at p. 1676.)

The court in *Higdon* relied heavily on an Illinois appellate court decision *In re Marriage of Thornton* (1985) 138 Ill.App.3d 906 [486 N.Ed.2d 1288], which adopted the screening procedures allowed under American Bar Association Model Rules of Professional Conduct, rule 1.12(c).[2] (*Thornton, supra,* at pp. 916-917.) As in *Higdon,* the judicial officer in *Thornton* apparently was not privy to any ex parte confidences from the party moving for recusal. The judge in that case had presided over a number of discovery matters in a marital dissolution action before leaving the bench to accept employment with the firm representing the husband. (*Thornton, supra,* at p. 915.) The *Thornton* opinion does not discuss the impact of confidences imparted to the judicial officer on the sufficiency of screening measures. It found that the screening procedures adopted in *Thornton* were "appropriate to remove any appearance of impropriety" and that disqualification of the former judge's firm was not required. (*Thornton, supra,* at p. 917.)

*Higdon* and *Thornton* are not helpful in our analysis because neither case addressed the question presented in this case: whether disqualification is required where the former judicial officer, now attorney, *was* privy to confidences revealed by the opposing party in the litigation. *Chambers* v. *Superior Court* (1981) 121 Cal.App.3d 893 [175 Cal.Rptr. 575] is distinguishable for the same reason. In that case, which involved disqualification of a former government attorney, the Court of Appeal concluded that there was no evidence that the attorney had acquired confidential information. (*Id.* at p. 903.)

■ The protection of the confidences of litigants has been a primary focus of rules of professional conduct in California and as drafted by the American Bar Association. (See Rules Prof. Conduct, rule 3-310(E); *Flatt* v. *Superior Court, supra,* 9 Cal.4th at p. 283 [discussing fiduciary duty of confidentiality in context of Rules of Professional Conduct]; ABA Model Rules Prof. Conduct, rules 1.6; 1.9; and 1.10.) Public attorneys moving to the private sector are treated separately under the American Bar Association's Model Rules of Professional Conduct, rule 1.11 (Model Rules). Subdivision (b) of that rule provides: "[A] lawyer having information that

---

[2]Both the *Higdon* and *Thornton* courts acknowledged that the American Bar Association Model Rules of Professional Conduct had not been adopted in their respective jurisdictions. (*Higdon* v. *Superior Court, supra,* 227 Cal.App.3d at p. 1680; *In Re Marriage of Thornton, supra,* 138 Ill.App.3d at p. 917 [486 N.E.2d at p. 1296]). Our Supreme Court has recognized that the American Bar Association Model Rules of Professional Conduct and the Model Code of Professional Responsibility have " 'no legal force of their own' " and have not been adopted in California. (*General Dynamics Corp.* v. *Superior Court* (1994) 7 Cal.4th 1164, 1190, fn. 6 [32 Cal.Rptr.2d 1, 876 P.2d 487].) The Supreme Court has looked to the principles underlying the American Bar Association counterparts to our rules of professional conduct (*Flatt* v. *Superior Court, supra,* 9 Cal.4th at p. 282) but also has declined to adopt the American Bar Association rules. (*General Dynamics, supra,* 7 Cal.4th at pp. 1189-1190 [ABA rules not adopted as predicate for claim of retaliatory discharge made by in-house counsel].)

the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom." (See *Kesselhaut* v. *U.S.* (1977) 555 F.2d 791 [214 Ct.Cl. 124].) Similarly, under the Model Rules, a former judge may not represent anyone in connection with a matter in which he or she "participated personally and substantially as a judge . . . ." (Model Rules, rule 1.12(a).) The rule on vicarious disqualification of the law firm employing a former judicial officer parallels the rule for former public attorneys: the disqualified attorney must be screened from participation, receive no share of the fee, and notice must be given to the appropriate tribunal. (Model Rules, rule 1.12(c).)

The integrity of the judicial process demands that litigants have confidence that a judicial officer who has been privy to revelations regarding the case in the course of settlement conferences will not later become aligned with the opposition. Unlike the disqualification of a former private sector attorney who has governmental information, here the former judge became privy to the confidences of private parties to the litigation.

We are presented with a situation in which the judge's role *did* include receiving confidences from petitioner's counsel ex parte during repeated settlement conferences. The case is analogous to that of a mediator who was disqualified from representing a litigant in a subsequent matter related to an earlier case in which the mediator had received confidences from the parties. (*Poly Software Intern., Inc.* v. *Su* (D. Utah 1995) 880 F.Supp. 1487.) In *Poly Software*, a copyright infringement case, Attorney Berne S. Broadbent was retained by Xiaowu Wang to represent him and his company, Poly Software, the plaintiffs. The defendants, Yu Su and his company, Datamost Corporation, moved to disqualify Broadbent and his firm on the ground that Broadbent had served as a mediator in previous litigation when Wang and Su were business partners in the Polysoft Partnership.

The *Poly Software* court found: "Broadbent conducted a series of intensive meetings, conferring with the parties both individually and together. During Broadbent's private caucuses with the Polysoft Partnership both Wang and Su were present and openly discussed confidential aspects of their case, including detailed analysis of their source codes and handbook comparisons. At the conclusion of the mediation process Micromath and the Polysoft Partnership successfully negotiated a settlement of their dispute." (880 F.Supp. at p. 1489.)

The federal district court looked to the Utah Professional Conduct Rules, which include rule 1.12, a provision identical in all significant respects to American Bar Association Model Rules of Professional Conduct, rule 1.12.[3] The *Poly Software* court examined the role of the mediator: "The attorney who thus serves as mediator is a neutral individual who confers with each party in private caucus, learning what results are acceptable to each of them and assessing in confidence the strengths and weaknesses of their cases. The mediator also meets with all parties together to facilitate settlement of the case. In this regard, mediation may well be the most valuable ADR option. 'Unlike the litigation and arbitration processes, mediation does not necessarily cast the parties in an adversarial relationship. Nor do parties emerge from the mediation process as clearly defined winners and losers.' [Citation.]" (880 F.Supp. at pp. 1493-1494, fn. omitted.)

The court compared the characteristics of a mediator with the typical role of a trial judge. "These characteristics of mediation demonstrate that it differs significantly from more formal adversarial proceedings at which an adjudicative officer presides. Most importantly, the mediator is not merely charged with being impartial, but with receiving and preserving confidences in much the same manner as the client's attorney. In fact, the success of mediation depends largely on the willingness of the parties to freely disclose their intentions, desires, and the strengths and weaknesses of their case; and upon the ability of the mediator to maintain a neutral position while carefully preserving the confidences that have been revealed. The Utah District Court ADR Manual, for instance, encourages the parties to disclose to the mediator (in strict confidence) '[a]ll critical information, whether favorable or unfavorable to the party's position,' and recommends that mediators 'advise the parties and their attorneys that it is neither helpful nor productive to withhold information with the intent of gaining some tactical advantage.' [Citation.] [¶] Adversarial proceedings, on the other hand, are characterized by vigorous attempts to maintain confidences. Attorneys who have received such confidential information are under a strict duty to avoid, without the consent of the client, any disclosures of that information. And because

---

[3]The Utah rule provides in pertinent part: "(a) Except as stated in paragraph (d) [relating to arbitrators], a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk to such a person, unless all the parties to the proceeding consent after disclosure. [¶] . . . [¶] (c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless: [¶] (1) The disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and [¶] (2) Written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this Rule." The only difference between the Utah Rule and the Model Rule is that under the Model Rule, paragraph (a) ends with "consent after consultation," rather than "consent after disclosure."

adjudicators do not occupy a relationship of confidence and trust with the parties akin to that occupied by the attorneys, they do not, for the most part, have access to those confidences. Thus, although mediators function in some ways as neutral coordinators of dispute resolution, they also assume the role of a confidant, and it is that aspect of their role that distinguishes them from adjudicators." (*Poly Software Intern. Inc.,* v. *Su, supra,* 880 F.Supp. at p. 1494.) The court's footnote 11 states: "This factor may have as much or more to do with the general prohibition on ex parte communications—a prohibition that is primarily concerned with preventing a party from gaining an advantage through secret communications to a decision maker. Nevertheless, the end result is that an adjudicative officer is rarely privy to any information that is not also revealed to the opposing party." (880 F.Supp. at p. 1494, fn. 11.)

Based on this characterization of the role of a mediator, *Poly Software* concluded: "As a result, the appropriate ethical rule for mediators differs somewhat from the text of the Utah Prof. Conduct Rules, rule 1.12. *Where a mediator has received confidential information in the course of mediation, that mediator should not thereafter represent anyone in connection with the same or a substantially factually related matter unless all parties to the mediation proceeding consent after disclosure.* This rule also takes into account some important policy considerations. *If parties to mediation know that their mediator could someday be an attorney on the opposing side in a substantially related matter, they will be discouraged from freely disclosing their position in the mediation, which may severely diminish the opportunity for settlement.* If, on the other hand, the disqualification net is thrown too wide, attorneys will be discouraged from becoming mediators. The 'substantially factually related' standard best balances those two interests. *It encourages parties to freely disclose their positions during mediation by assuring them that the specific information disclosed will not be used against them at a later time.* It also limits disqualification to subsequent situations where there is a substantial factual nexus with the previously mediated dispute." (*Poly Software Intern., Inc.* v. *Su, supra,* 880 F.Supp. at p. 1494, italics added.)

The court also concluded that the disqualification of the mediator must be imputed to the other members of his firm. "Once again, because this case does not fit within any previously established ethical rule, the scope of imputed disqualification must be inferred from the present rules. Rule 1.10(a) states: 'While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8(c), 1.9 or 2.2.' This enumerated list primarily encompasses those provisions relating to reception of confidential information. Because mediators are disqualified on that basis as well, Rule 1.10(a) likewise applies to them." (*Poly Software Intern., Inc.* v. *Su, supra,* 880 F.Supp. at p. 1495, fn. 13.)

We agree with the analysis in *Poly Software* that disqualification of both the individual attorney and his or her firm is required where the attorney has been privy to confidences of a litigant while acting as a neutral mediator. We also agree with the distinction drawn between adjudicators and mediators, so long as the adjudicator does not become a mediator and, in doing so, receive confidences from the parties going to the essential merits of the dispute. Where a judicial officer has presided over settlement conferences which included ex parte communication, we presume the revelation of confidences relating to the merits of a litigant's case. The same principles discussed in *Poly Software* demand disqualification of both the former judge and his or her new firm in such circumstances. The case for disqualification of the judge is even more compelling than the case of the mediator, who has a far more limited role in a matter than a judge. ■ In California, "[t]he usual role for a settlement judge is *mediation*, i.e., 'intermediating between two contending parties with a view to persuading them to adjust or settle their dispute.' [Citation.]" (*Mohn* v. *Kohlruss* (1987) 196 Cal.App.3d 595, 598 [242 Cal.Rptr. 110].)

All manner of issues are discussed in confidence at a settlement conference, including the strengths and weaknesses of each party's case, and the amount the party is willing to pay or receive in settlement. "[A] settlement conference judge does not decide anything—he merely uses his judicial status to help the parties reach a settlement if reasonably possible. To this end it has been said that the judge should actively participate in the negotiating process to 'break the ice' between litigants who may be reluctant to settle. The judge should also use any expertise he may have in the subject area of the litigation to express his opinions of the settlement value of the various causes of action against the different defendants or of the range in which negotiations may realistically proceed. He should listen to and carefully evaluate the parties' personal contentions so they will feel they have had their 'day in court' if the case is settled. [Citations.]" (*Horton* v. *Superior Court* (1987) 194 Cal.App.3d 727, 733 [238 Cal.Rptr. 467].)

No amount of assurances or screening procedures, no "cone of silence," could ever convince the opposing party that the confidences would not be used to its disadvantage. When a litigant has bared its soul in confidential settlement conferences with a judicial officer, that litigant could not help but be horrified to find that the judicial officer has resigned to join the opposing law firm—which is now pressing or defending the lawsuit against that litigant.[4] No one could have confidence in the integrity of a legal process in which this is permitted to occur without the parties' consent.

[4]We emphasize that there is no basis for criticism of Judge Younger, and we imply none. The record indicates that Graham & James did not represent the bank when the mandatory

■ Petitioner has urged us to adopt the "substantial relationship" test applied in *Rosenfeld Construction Co.* v. *Superior Court, supra,* 235 Cal.App.3d 566. As originally formulated in California, that rule provided: "When a substantial relationship has been shown to exist between the former representation and the current representation, and when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney or to subordinates for whose legal work he was responsible, the attorney's knowledge of confidential information is presumed. [Citation.] [¶] This is the rule by necessity, for it is not within the power of the former client to prove what is in the mind of the attorney. Nor should the attorney have to 'engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation.' [Citations.]" (*Global Van Lines, Inc.* v. *Superior Court* (1983) 144 Cal.App.3d 483, 489 [192 Cal.Rptr. 609].) In *Rosenfeld,* the court concluded that once the substantial relationship is satisfied, disqualification of the entire firm was required because a screening procedure would not suffice. (235 Cal.App.3d at p. 577.) The court emphasized the important policy considerations supporting its conclusion. "While attorneys should be able to move freely from membership in one firm to another and clients should be allowed their choice of an individual attorney, the importance of maintaining public respect for and belief in the integrity of the legal profession should not take a back seat to other considerations. [¶] The right to counsel of one's choice must be balanced with 'the paramount objective of maintaining public confidence in the impartiality of the courts and the integrity of its professional bar.' [Citation.]" (*Id.* at p. 578.)

■ We have no quarrel with the *Rosenfeld* court's policy analysis, but we find that it does not apply to this case. Here, Judge Younger had no previous attorney-client relationship with petitioner. Moreover, the motion to disqualify was brought in the identical action in which Judge Younger served as settlement judge. Under these circumstances, the "substantial relationship" test does not apply. The common theme between the disqualification opinions discussed in *Rosenfeld* and our case is the vital importance of maintaining confidences disclosed in the course of litigation to ensure public trust in the judicial system.

In light of our conclusion that Graham & James must be disqualified, we need not reach petitioner's challenges to the findings made by the referee and his treatment of the oral representations at the hearing as testimony.

---

settlement conference took place, nor does it show that Judge Younger had any information that such representation was in prospect. Nor is there any indication that he had that information at any time while he was the judge assigned to the underlying proceedings.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order denying petitioner's motion to disqualify Graham & James and to enter a new order granting the motion. The temporary stay of proceedings is dissolved upon finality of this decision. Petitioner is to have her costs.

Woods (A. M.), P. J., and Hastings, J., concurred.

A petition for a rehearing was denied November 17, 1995, and the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied January 31, 1996.