[No. B194512. Second Dist., Div. Six. Apr. 18, 2007.]

LAURA KNIGHT et al., Plaintiffs and Respondents, v.
PERRY FERGUSON et al., Defendants and Appellants.

## COUNSEL

Richard I. Wideman for Defendants and Appellants.

Hathaway, Perrett, Webster, Powers, Chrisman & Gutierrez, Alejandro P. Gutierrez; Rincon Venture Law and K. Andrew Kent for Plaintiffs and Respondents.

## OPINION

**GILBERT, P. J.**—Plaintiff moves to recuse defendants' lawyer in a lawsuit over a partnership and lease agreement. Prior to the lawsuit, the attorney briefly represented plaintiff to discuss her concerns about the partnership and lease agreement with another party involving the same business that is the subject matter of the lawsuit. Plaintiff knew that the attorney had represented defendants in other matters. Defendants were present at the meetings between plaintiff and the attorney, and privy to all their discussions.

Did the trial court properly disqualify the attorney? Yes. Defendants' presence at meetings between plaintiff and the attorney does not sufficiently attenuate the attorney's conflict. To separate the conflict from the two sets of clients is to separate the silk from the thread. It cannot be done.

Defendants Perry Ferguson and Paula Ferguson appeal an order granting plaintiff Laura Knight's motion to disqualify the Fergusons' attorney, Richard Wideman. Knight had consulted previously with Wideman about forming a partnership and entering into a commercial lease to establish a new restaurant. The dispute between Knight and the Fergusons concerns that business venture. There is a substantial relationship between Wideman's representation of the Fergusons in this case and his prior consultations with Knight. We affirm.

### FACTS

Knight owned the Pascucci restaurant in Santa Barbara. In 2004, she decided to open a branch of that restaurant in Goleta at the Camino Real

Marketplace (CRM). She found a partner, Steven Sponder, who agreed to assist her with the financing. They negotiated with Chevy's, a business in bankruptcy, to "become the assignee of the Chevy's ground lease" at the CRM.

In December of 2004, Knight met with Wideman to discuss the lease and her partnership arrangement for the new restaurant, Pascucci at the Camino Real Marketplace (Pascucci CRM), a California corporation. Wideman, who was also the attorney for the Fergusons, Knight's sister and brother-in-law, billed Knight for his consultations.

Knight did not form a partnership with Sponder. She asked the Fergusons "to take [his] place and participate in the ownership and the management" of Pascucci CRM. They agreed to participate and finance the venture.

In 2005, Knight sued the Fergusons for breach of contract and sought dissolution of Pascucci CRM. She alleged that the Fergusons breached their duties as corporate directors and improperly "removed [her] from her duty of managing and overseeing [the] overall operation of the [r]estaurant."

The Fergusons filed a cross-complaint against Knight, stating causes of action for fraud, breach of contract, and breach of fiduciary duties. They alleged that: (1) Knight had not managed the restaurant properly and tried to undermine their control; (2) Knight promised to run Pascucci CRM as a corporation, but secretly intended to operate it "as a sole proprietorship"; (3) they assumed Sponder's partnership role after his and Knight's partnership arrangement "fell apart" in 2004; and (4) they relied to their detriment on Knight's promises and incurred liabilities when they became the "assignee of the ground lease."

Initially, the Fergusons were represented by the law firm of Cappello and Noël. But they changed counsel, and Wideman substituted into the action to represent them.

### Motion to Disqualify Wideman

Knight moved to disqualify Wideman from representing the Fergusons. In her declaration, she said she told Wideman of her "feelings [about] litigation and [her] position . . . relating to the [CRM] lease . . . ." She also discussed her relationship with Sponder and her plans to "purchase" the CRM "ground lease."

Wideman declared that he did not obtain confidential information from Knight. He met with Knight and her attorney, Eric Burkhardt, at the request of the Fergusons, who were also present. Wideman said, "I told Ms. Knight that I was 'the Fergusons' attorney' and they had asked me to help her, and that I would expect [Knight] to pay me and she agreed." He said Knight discussed with him "potential litigation" involving Sponder, who "had attempted to change the terms" of a partnership agreement for the purchase of Chevy's in the CRM. Knight "was concerned about litigation against her should she go forward with the deal by herself." Wideman advised Knight to send a " 'put-up-or-go-away' " letter to Sponder and suggested a possible " 'preemptive' " lawsuit.

At the disqualification hearing, Knight testified that she had three meetings with Wideman. She expected there would be litigation and that he would be her "litigation counsel." Burkhardt testified that he met with Knight and Wideman. At the hearing, Wideman asked Burkhardt, "Do you remember that at that meeting at least you knew that I was advising Mr. and Mrs. Ferguson at that time?" Burkhardt responded, "My understanding at that time is that you were both representing Mr. and Mrs. Ferguson and representing Ms. Knight in, at least, certain regards." Wideman asked, "My question was only, you knew I was representing Mr. and Mrs. Ferguson." Burkhardt responded, "I did understand that you had in the past represented Mr. and Mrs. Ferguson."

The trial court found that "Wideman's role as litigation counsel was brief, but was not peripheral. The nature of the former representation . . . was such that confidential material to the current dispute would normally have been imparted to the attorney."

## DISCUSSION

### *Substantial Relationship Test*

██ "A motion to disqualify counsel brings the client's right to the attorney of his or her choice into conflict with the need to maintain ethical standards of professional responsibility. [Citations.] The paramount concern is the preservation of public trust in the scrupulous administration of justice and the integrity of the bar. [Citations.]" (*Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 705 [3 Cal.Rptr.3d 877] (*Jessen*).)

"Where an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, . . . the attorney [must] be disqualified from the second representation. [Citation.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146 [86 Cal.Rptr.2d 816, 980 P.2d 371] (*SpeeDee Oil Change Systems*).) "[T]he substantial relationship test is 'intended to protect the confidences of former clients when an attorney has been in a position to learn them.'" (*H. F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1455 [280 Cal.Rptr. 614] (*H. F. Ahmanson & Co.*).)

The "court should 'focus on the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases.'" (*H. F. Ahmanson & Co., supra*, 229 Cal.App.3d at p. 1455.) It should consider "'. . . the attorney's possible exposure to formulation of policy or strategy.' [Citation.]" (*Ibid.*) Where there is a substantial relationship, it is presumed the attorney had access to confidential information. (*SpeeDee Oil Change Systems, supra*, 20 Cal.4th at p. 1146.) "Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion." (*Id.* at p. 1143, citing *Cho v. Superior Court* (1995) 39 Cal.App.4th 113, 119 [45 Cal.Rptr.2d 863].)

█ The Fergusons contend there was no substantial relationship between Wideman's representation of Knight and the current case which concerns different issues. The legal theories and issues that an attorney discusses with a former client may be different than those involved in the subsequent lawsuit against that client. But the substantial relationship test is broad and not limited to the "strict facts, claims, and issues involved in a particular action." (*Jessen, supra*, 111 Cal.App.4th at p. 711.) "[A] 'substantial relationship' exists whenever the 'subjects' of the prior and the current representations are linked in some rational manner. [Citation.]" (*Ibid.*) That is the case here. Knight retained Wideman to discuss a lease and partnership relating to the creation of the restaurant which is the subject of this action.

The Fergusons claim that Wideman's consultations with Knight were remote and peripheral. We disagree. They occurred at a critical stage, when Knight was creating the business entity which is at the heart of this action. Facts about Knight's difficulties with Sponder could be used to the Fergusons' advantage. In their cross-complaint, the Fergusons allege that Knight's partnership with Sponder "fell apart," and that Knight asked them to "take her

partner's [Sponder's] place and participate in the ownership and management . . . ." Knight's discussions with Sponder are therefore linked to issues in this action.

■ The Fergusons claim that Knight did not prove that Wideman obtained confidential information. The "aggrieved client" need only satisfy a "low threshold of proof" and does not have to prove the attorney actually received confidential information. (*Jessen, supra,* 111 Cal.App.4th at pp. 706, 707.) Where a substantial relationship is shown between the prior representation and the present case, (1) it is presumed the attorney received confidential information (*SpeeDee Oil Change Systems, supra,* 20 Cal.4th at p. 1146), and (2) the attorney's disqualification "is mandatory." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 [36 Cal.Rptr.2d 537, 885 P.2d 950].)

Knight said that Wideman "obtained confidential information concerning [her] and [her] restaurant, Pascucci, that is relevant to the subject matter of this action, including [her] feelings related to litigation and [her] position and feelings relating to the lease at the Goleta location." The Fergusons claim she is not credible and the evidence supports a different result. But we do not weigh the evidence or resolve evidentiary conflicts. (*Eidsmore v. RBB, Inc.* (1994) 25 Cal.App.4th 189, 195 [30 Cal.Rptr.2d 357].) We presume that the trial court resolved any credibility dispute in favor of Knight. (*Ibid.*) Moreover, the evidence supports the finding that Wideman was in a position to learn Knight's confidences during his consultations with her. (*H. F. Ahmanson & Co., supra,* 229 Cal.App.3d at pp. 1455, 1457.)

Knight notes that the trial court's finding relied on Burkhardt's testimony that Wideman was representing both the Fergusons and Knight. The Fergusons claim that a reasonable inference from Burkhardt's testimony is that Wideman was representing the Fergusons on different matters. In her declaration, Knight stated that before the meeting with Wideman, the Fergusons "offered to invest a certain sum towards the purchase of the Chevy's ground lease and building." Knight said they were to be the "new team" to take over from Sponder. From this, the trial court could reasonably infer that the Fergusons went to the meetings with Wideman for assistance in clearing the legal obstacles to creating a new partnership with Knight. But even if this were not the case, Wideman's attorney-client relationship with Knight dictates the same result.

The Fergusons were always present during Knight's consultations with Wideman. They argue that Knight's discussions with Wideman were therefore neither privileged nor confidential. At oral argument, Wideman claimed

that because those discussions were not confidential, his representing the Fergusons cannot prejudice Knight. Wideman sells himself short. He is a lawyer with wide litigation experience. He was aware of Knight's business concerns and aspirations. Her ability to work with a partner is a possible issue in this case. In their cross-complaint the Fergusons allege that Knight did not recognize that her business relationship with them was corporate and not her sole proprietorship. However good his intentions, he cannot help but use his expertise to exploit those concerns. The Fergusons' presence at the meetings is beside the point.

■ Where an attorney acquires knowledge about the former client's "attitudes," practices, business customs, "litigation philosophy," strengths, weaknesses or strategy, disqualification may be required for that reason alone. (*Jessen, supra*, 111 Cal.App.4th at p. 712.) Moreover, in addition to the meetings he had with Knight, Wideman also communicated with Burkhardt to develop a strategy which anticipated possible future litigation relating to the agreement with Sponder. This, in turn, set the framework for the Fergusons to take over his partnership interest. Wideman also advised Burkhardt how to deal with Chevy's, which facilitated the legal groundwork for Knight and the Fergusons to later assume the Chevy's lease.

■ Moreover, even if the attorney-client evidentiary privilege does not apply, the result does not change. (*Western Continental Operating Co. v. Natural Gas Corp.* (1989) 212 Cal.App.3d 752, 761 [261 Cal.Rptr. 100] (*Western Continental Operating Co.*).) "[T]he pertinent issue is the propriety of an attorney's representation adverse to a former client. Our courts have distinguished the rule against representing conflicting interests from the attorney-client evidentiary privilege noting that the former is broader than the latter." (*Id.* at pp. 761–762.) Thus, even where the issue of disclosure of privileged information is absent, an attorney is properly disqualified for violating the separate and independent duty not to represent conflicting interests. (*Id.* at p. 762.) " ' " 'The evidentiary privilege and the ethical duty not to disclose confidences both arise from the need to encourage clients to disclose all possibly pertinent information to their attorneys, and both protect only the confidential information disclosed. The duty not to represent conflicting interests . . . is an outgrowth of the attorney-client relationship itself, which is confidential, or fiduciary, in a broader sense. Not only do clients at times disclose confidential information to their attorneys; they also repose confidence in them. The privilege is bottomed only on the first of these attributes, the conflicting-interests rule, on both.' [Citation.]" ' [Citations.]" (*Ibid.*) A lawyer has a duty not to " 'do anything which will injuriously affect his former client.' " (*People ex rel. Deukmejian v. Brown*

(1981) 29 Cal.3d 150, 156 [172 Cal.Rptr. 478, 624 P.2d 1206].) "Where the lawyer switches sides and represents the former client's adversary in the same matter, everything the lawyer does for the new client necessarily will injuriously affect the former client." (*City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 329 [117 Cal.Rptr.2d 125].)

██ Knight testified that she believed that Wideman was her "litigation counsel." She had the right to "repose confidence" in him and to expect that his loyalty to her would not be compromised. (*Western Continental Operating Co., supra*, 212 Cal.App.3d at pp. 761–762.) "[T]he law regards the shifting of loyalty and allegiance from one of two adverse interests to the other as impossible, and will have none of it." (*Dettamanti v. Lompoc Union School Dist.* (1956) 143 Cal.App.2d 715, 723 [300 P.2d 78].)

A "distinct fundamental value of our legal system is the attorney's obligation of loyalty." (*SpeeDee Oil Change Systems, supra*, 20 Cal.4th at p. 1146.) The disqualification rule is "to keep honest attorneys from having to choose between conflicting duties, or being tempted to reconcile conflicting interests, rather than fully pursuing their clients' rights. [Citation.] The loyalty the attorney owes one client cannot be allowed to compromise the duty owed another. [Citation.]" (*Id.* at p. 1147.) The trial court's ruling ends this ethical dilemma and protects Knight's interests as a former client. (*Ibid.*) The Fergusons' interest in maintaining their current counsel "must yield to ethical considerations that affect the fundamental principles of our judicial process. [Citations.]" (*Id.* at p. 1145.)

Wideman's overwrought petition for rehearing approaches contempt. He accuses this court of unfairly attacking him, taking an "absurd stretch" to reach its conclusions, and "actively" disregarding an undisputed fact.

We assume his hyperbolic argument is driven by the mistaken belief that our opinion reflects on his professional integrity. It does not. Cases involving conflicts are far from precise. Some of Wideman's arguments, stripped of their emotionally charged adjectives, are reasonable, and have more than a modicum of merit. Nevertheless, the trial court acted well within its discretion. Our decision relieves Wideman from the impossible burden of partitioning loyalty to his clients.

We have reviewed the Fergusons' remaining contentions and conclude that they have not shown reversible error.

The order is affirmed. Costs are awarded to respondents on appeal.

Coffee, J., and Perren, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 11, 2007, S153107.