Filed 5/18/15  Sukhov v. Sukhov CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHEN SUKHOV et al.,<br><br>　Plaintiffs and Appellants,<br><br>　　v.<br><br>ALEX SUKHOV et al.,<br><br>　Defendants and Respondents. | G050743<br><br>(Super. Ct. No. RIP094118)<br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

On the court's own motion, it is ordered that the opinion filed April 29, 2015, be modified as follows:

On page 1, in the first sentence of the first full paragraph, replace "Temporary Judge" with "Commissioner" so the sentence reads:

"Appeal from an order of the Superior Court of Riverside County, Joan F. Burgess, Commissioner."

This modification does not change the judgment.


THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

Filed 4/29/15  Sukhov v. Sukhov CA4/3 (unmodified version)

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHEN SUKHOV et al., | |
| Plaintiffs and Appellants, | G050743 |
| v. | (Super. Ct. No. RIP094118) |
| ALEX SUKHOV et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Riverside County, Joan F. Burgess, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Motion for Judicial Notice.  Order affirmed.  Motion granted in part.

Law Offices of Michelle J. Sukhov and Michelle J. Sukhov for Plaintiff and Appellant Stephen Sukhov.

Law Offices of Lee R. Goldberg and Lee R. Goldberg for Plaintiff and Appellant John Sukhov.

Thompson & Colegate, Susan Knock Brennecke and John A. Boyd for Defendants and Respondents.

Plaintiffs Stephen Sukhov and John Sukhov appeal from an order denying their motion to disqualify the attorneys representing defendants Alex Sukhov, Vladimir Sukhov, and Boris Sukhov. They argue defendants' counsel improperly "aligned" themselves with the retired judge who had acted as a mediator and temporary judge in this matter, thereby obtaining confidential information related to the pending action. There is no evidence defendants obtained any confidential information nor is there any alignment or appearance of impropriety that would require disqualification. Therefore we affirm the order.

Defendants filed a motion for judicial notice as to two documents, a declaration filed by the temporary judge and the trial court's order striking it. Plaintiffs did not oppose the motion. Defendants request we take judicial notice only of the existence of the declaration and that its contents were consistent with information previously provided to both parties, not of the truth of the contents of the declaration. We grant the motion as to the existence and contents of the declaration pursuant to Evidence Code sections 452, subdivision (d) and 459, and *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1265-1266. We deny the motion as to the order because it is already part of the record.

## FACTS AND PROCEDURAL HISTORY

The parties are five of the six sons of Roza Sukhov. In 1989 Roza created a trust leaving unequal shares of her estate to her six sons. Ten years later, she revised the trust, disinheriting John, and in 2003 by amendment, she disinherited Stephen. Defendants are the trustees of the trust.

In 2008 Stephen filed a petition to set aside the amendment whereby he was disinherited, alleging Roza amended the trust based on defendants' undue influence, fraud, and duress. Two years later John filed a petition against defendants seeking to obtain an interest in what the parties refer to as the Wildomar property.

2

In 2012 all five parties retained retired judge Arnold H. Gold to mediate their disputes at a cost of $500 per hour. Stephen agreed to pay 20 percent of the Judge Gold's fees and defendants agreed to pay the remaining 80 percent; John did not agree to pay any of the cost.

Prior to and during the mediation Stephen's attorney provided Judge Gold with confidential information. Also during the mediation, Judge Gold disclosed to all the parties and their lawyers that he had previously mediated cases for clients of defendants' counsel's firm.

After a 14-hour mediation, the parties arrived at a tentative settlement, contingent on court approval. The pertinent provisions of the settlement agreement (Agreement) were as follows: The value of the Wildomar property was to be calculated by a formula set out in the Agreement, and, after court approval, paid to Stephen 60 days thereafter. Stephen was to be paid another $25,000 and given assorted tools and machines on the Wildomar property. What the parties referred to as the California City property was also to be transferred to him.

John was to be paid $50,000. John and Stephen were to dismiss their respective actions. The Agreement stated any action to enforce or interpret it would be heard by Judge Gold sitting as a judge pro tem.

Shortly after the Agreement was signed, Judge Gold began the process of selecting the appraisers and defendants filed a petition for approval of the Agreement. Stephen filed an opposition, claiming his understanding of the date of valuation of the Wildomar property was not accurately set out in the Agreement. Ultimately, the parties stipulated as to the date of valuation and the court approved the Agreement.

Thereafter, over plaintiffs' objection, the court granted defendants' motion to have Judge Gold appointed as judge pro tem. Stephen's lawyer advised Stephen would not pay Judge Gold to act in this capacity. Stephen's counsel thereafter notified

Judge Gold of that fact and asked that he not incur any additional fees pending her motion to set aside the Agreement.

Defendants subsequently advised the court they would pay their 80 percent share and Judge Gold would proceed. Stephen objected to Judge Gold being paid only by defendants, stating he appeared to be "a man for hire" and agreeable to be paid only by defendants. The trial court responded that unless Stephen claimed Judge Gold was biased, arrangements for payment of his fees was not Stephen's concern.

Subsequently Stephen filed a motion to vacate the Agreement (Motion to Vacate) on various grounds, including that there was no provision in the Agreement to pay Judge Gold to act as a judge pro tem. The court ordered Judge Gold to hear this motion.

Judge Gold denied the Motion to Vacate. Although there was no explicit provision in the Agreement for payment of his fees as a judge pro tem, it was discussed during the mediation. Payment, a reasonable rate, i.e., $500 per hour, and a reasonable apportionment were implied in the Agreement.

Defendants filed an application to enforce Judge Gold's ruling. The court ruled the Agreement set out Judge Gold's authority to sit as a judge pro tem and he had been appointed as such. Thus, Judge Gold's ruling denying the Motion to Vacate was the equivalent of an order by the court and enforceable.

Thereafter, Stephen filed a motion to disqualify Judge Gold (Motion to Disqualify Judge Gold). He claimed Judge Gold would likely be a witness in the case; there was a question as to his impartiality, because, among other things he had selected the appraisers Stephen was challenging; and Judge Gold had a financial interest in the matter based on his decision that the Agreement provided he would be paid.

Shortly thereafter, while the Motion to Disqualify Judge Gold was pending, plaintiffs filed a motion to withdraw their stipulation for Judge Gold to act as a judge pro tem and to vacate all of his orders (Motion to Withdraw Stipulation). A few days later

4

Judge Gold voluntarily recused himself, stating that "as a result of an event (which he did not identify) that occurred yesterday, there is now a substantial doubt in my mind as to whether I still have the capacity to be impartial in the above-entitled case."

Judge Gold sent an e-mail to all counsel stating that, while he disagreed with plaintiffs' Motion to Withdraw Stipulation, he would not oppose it. He also stated that if any of the attorneys for the parties asked him, he would "consider supplying a declaration in connection with [the M]otion [to Withdraw Stipulation]."

The next week Judge Gold e-mailed all counsel and explained he had recused himself when he received plaintiffs' Motion to Withdraw Stipulation. He explained he was concerned that Stephen would "spend virtually limitless time in repeating his efforts to set the [Agreement] aside and undo my . . . orders, which in turn would make it necessary for me . . . to devote very substantial amounts of additional uncompensated time in the future." Thus, "I . . . began to have substantial doubt in my mind as to whether I . . . still had the capacity to be impartial . . . ."

A few days later, defendants filed an opposition to the Motion to Withdraw Stipulation that included a declaration from Judge Gold (Gold Declaration).[1] The Gold Declaration stated he had acted as a mediator, at his normal rate of $500 per hour, paid 80 percent by defendants and 20 percent by Stephen. On receipt of the Motion to Withdraw Stipulation he filed his recusal. Until that date he had been impartial but after receiving the Motion to Withdraw Stipulation he "began to have substantial doubt . . . as to whether [he] still had the capacity to be impartial . . . ." He continued that he had never discussed the value of the Wildomar property in interviewing or selecting an appraiser. The court struck the Gold Declaration.

As a result of Judge Gold submitting the Gold Declaration on behalf of defendants, Stephen filed a motion to disqualify defendants' attorneys (Motion to

---

[1] This is the document of which we take judicial notice.

Disqualify Counsel), later joined by John. Stephen asserted defendants' counsel and Judge Gold had ex parte discussions to which he was not a part, and Judge Gold assisted defendants in opposing his Motion to Withdraw Stipulation.

In support of defendants' opposition, their lawyer filed a declaration in which she explained that a few days after Judge Gold recused himself, she participated in a mediation for other clients conducted by Judge Gold. They had a conversation in which Judge Gold reiterated his offer to submit a declaration in connection with the Motion to Withdraw Stipulation on any party's behalf. He also reiterated that he had recused himself after receiving the Motion to Withdraw Stipulation. According to defendants' counsel, she and Judge Gold did not talk about anything regarding the merits of this action or anything that had been discussed during the mediation or regarding the appraisals. Further Judge Gold did not disclose any confidential information he received from any other party.

Another lawyer from defendants' firm also filed a declaration in which she detailed the logistics of obtaining the Gold Declaration. She contacted him via e-mail to ask if he would sign a declaration stating he had been impartial throughout until he had voluntarily recused himself for the reason stated in his declaration. She then spoke with him by phone about what information he would include in the declaration. Judge Gold told her that in none of his conversations with the appraisers had he ever discussed the value of the Wildomar property. He reiterated his impartiality until his voluntary recusal. Thereafter, defendants' attorney e-mailed a proposed declaration to Judge Gold. After a follow-up e-mail, Judge Gold left a voice mail message informing her he had returned the signed declaration. She stated Judge Gold never disclosed any information he had received from another party and they did not discuss anything beyond his impartiality and later recusal.

At the hearing on the Motion to Disqualify Counsel, the court explained it had found no authority to disqualify defendants' counsel given the facts of the case and did not believe it was proper. It denied the motion.

Thereafter, the court essentially denied the Motion to Withdraw Stipulation. Except for striking Judge Gold's appointment of a third appraiser, it let stand his other rulings.

## DISCUSSION

### 1. Standard of Review

Where there are disputed factual issues we review a ruling on a disqualification motion for abuse of discretion. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143-1144.) But where the trial court makes no factual findings, we review the ruling de novo. (*Cho v. Superior Court* (1995) 39 Cal.App.4th 113, 119 (*Cho*).) Here the court did not make any finding of fact and thus we review the denial of the Motion to Disqualify as a matter of law.

### 2. No Disqualification Required

The basis of plaintiffs' argument is that defendants' counsel must be disqualified because the mediator "aligned" himself with them by filing the Gold Declaration in opposition to their Motion to Withdraw the Stipulation. They assert Judge Gold was privy to their confidential information and his "alignment" raised the "possibility" he had disclosed it. As support for their claim they rely heavily on *Cho*, *supra*, 39 Cal.App.4th 113.

In *Cho*, a judge acted as a mediator in the underlying case. While the case was still pending, the judge retired and made an arrangement with a firm to become of counsel. At about the same time, that firm began representing Cho's opponent in that case. When the new firm learned the retired judge had mediated the case and before he began his tenure, it quickly imposed a """"cone of silence"""" around him. (*Cho*, *supra*, 39 Cal.App.4th at p. 117.) Within a couple of weeks the firm notified opposing counsel of

the retired judge's affiliation with the firm and the steps it had taken to shield him from any involvement in the case.

Opposing counsel then made a motion to disqualify the firm. In the opposition, the retired judge filed a declaration stating he did not believe he had obtained any confidential information and if he had, he did not remember it.

The court granted the motion. It ruled that "[n]o amount of assurances or screening procedures, no 'cone of silence,' could ever convince the opposing party that their confidences would not be used to its disadvantage. When a litigant has bared its soul in confidential settlement conferences with a judicial officer, that litigant could not help but be horrified to find that the judicial officer has resigned to join the opposing law firm . . . ." (*Cho*, *supra*, 39 Cal.App.4th at p. 125.)

In reaching its conclusion, *Cho* relied on *Poly Software Intern., Inc. v. Su* (D.Utah 1995) 880 F.Supp. 1487, on which plaintiffs rely as well. There the defendants made a motion to disqualify the plaintiffs' counsel and his firm because the plaintiffs' lawyer had acted as a mediator in a previous case between the defendant and the plaintiff. The Court of Appeal concluded that where confidential information had been disclosed to a mediator, the mediator could not thereafter represent one of the parties in the same matter. It found that parties to a mediation would not disclose confidential information if they knew the mediator could later represent one of the parties. (*Cho*, *supra*, 39 Cal.App.4th at pp. 123, 124.)

*Cho* stated, "We agree with the analysis in *Poly Software* that disqualification of both the individual attorney and his or her firm is required where the attorney has been privy to confidences of a litigant while acting as a neutral mediator." (*Cho*, *supra*, 39 Cal.App.4th at p. 125.)

*Cho* and *Poly Software* dealt with situations where the mediator joined a firm representing one of the parties. The facts in our case are quite distinguishable.

8

Judge Gold did not join defense counsel's firm and is not acting as a lawyer on defendants' behalf.

Further, there is no evidence Judge Gold has "an on-going private, professional relationship" with defendants' lawyers in which he "receives compensation for services rendered." Rather, he is a professional mediator, part of a firm that provides neutrals to parties who pay for the services.

That Judge Gold acted as a mediator in one other case with defendants' lawyers is hardly an "on-going private, professional relationship." Plaintiffs' apparent suggestion that a mediator can participate in only one case with any given firm is impractical and contrary to the reality of litigation today. Not surprisingly, plaintiffs point to no authority for that proposition.

Plaintiffs' statement that defendants' lawyers never represented they would "discontinue their association with Judge Gold during the pendency of this litigation" assumes a duty where none exists. It also assumes, without any evidence in support, that Judge Gold would disregard his duty of confidentiality.

Plaintiffs make much of the fact that there came a time when only defendants were paying Judge Gold. But this was of plaintiffs' own doing. John never paid and although Stephen paid up to a point, he then refused to pay anything further. There is nothing nefarious in the fact Judge Gold agreed to continue with the case while accepting only 80 percent of his agreed fee, paid by defendants' firm as originally promised.

We reject plaintiffs' argument there has been a violation of California Rules of Court, rule 2.832, which states a temporary judge may not be paid without a written agreement signed by the parties as to the rate of payment. In deciding the Motion to Vacate, Judge Gold ruled payment was implied in the Agreement.[2]

_____

[2] No appeal of or writ was taken from that order.

9

Nor is there any appearance of impropriety. Judge Gold offered to provide a declaration to any party on request. Defendants took him up on it. Plaintiffs did not. Thus, contrary to the picture plaintiffs try to paint, there is nothing sinister about it.

The Gold Declaration itself is quite limited in scope, essentially stating Judge Gold was impartial until Stephen filed the Motion to Withdraw Stipulation, at which time he determined he could probably no longer be impartial and recused himself. The Gold Declaration does not refer or even allude to the mediation or any confidential information and plaintiffs do not claim otherwise. The reference in the Gold Declaration that Judge Gold's notice of recusal to the parties was attached as an exhibit does not suggest he reviewed the entire opposition.

In addition, the Gold Declaration added nothing to defendants' opposition. Defendants attached a copy of Judge Gold's e-mail to all parties where he explained why he recused himself. The Gold Declaration essentially repeated that.

*Shadow Traffic Network v. Superior Court* (1994) 24 Cal.App.4th 1067 and *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, on which plaintiffs rely, are factually dissimilar, and do not aid their cause. In *Shadow Traffic*, the court held the defendants' lawyers were properly disqualified because they retained an expert whom the plaintiff's firm had previously interviewed for possible hire in the same case.

We are not persuaded by plaintiffs' claim Judge Gold, acting as a mediator, is the "ultimate 'retained expert'" a la *Shadow Traffic*. The fact defendants agreed to pay and continued to pay Judge Gold cannot be stretched to a conclusion defendants "retained" him. Plaintiffs admit all parties retained Judge Gold. Further, the fact Judge Gold held himself out as an expert in probate does not mean he was retained in that capacity.

In *In re Complex Asbestos Litigation*, *supra*, 232 Cal.App.3d 572 the court disqualified a law firm because its paralegal had confidential information he received from previous employment with opposing counsel in the pending action, and there was

10

no written consent or proper screening of the paralegal from participating in the litigation. (*Id*. at p. 579.) There are no comparable facts in our case.

Plaintiffs' reliance on general legal principles set out in those cases is also not persuasive. We agree "the paramount concern . . . must be the preservation of public trust in the scrupulous administration of justice and the integrity of the bar." (*In re Complex Asbestos Litigation*, *supra*, 232 Cal.App.3d at p. 586.) Likewise we agree that an attorney must be recused after "[h]aving become privy to an opposing attorney's work product." (*Shadow Traffic Network v. Superior Court*, *supra*, 24 Cal.App.4th at p. 1081.) But those tenets do not apply to the facts in this case.

Plaintiffs refer to a report Judge Gold filed wherein he explained his appointment with an appraiser and a telephone conference he had scheduled to discuss the logistics of her appraisal, including payment of fees and contact between her and the parties' lawyers. Plaintiffs contend this was filed in coordination with defendants and for their benefit.

But they point to no evidence in the record to support this claim. The report was addressed to all parties. There is nothing to suggest Judge Gold discussed or needed to discuss the contents of the report with any of the parties. And the report itself did not support or oppose the parties' respective positions. The mere fact Judge Gold filed a report does not demonstrate any improper relationship with defendants' lawyers.

Nor was there a violation of California Rules of Court, rule 2.818(e), which provides that when a temporary judge disqualifies himself, he "must not further participate in the proceeding" without the parties' written waiver. Giving the Gold Declaration was not participation in the proceedings under that rule.

11

**DISPOSITION**

The order is affirmed.  The motion for judicial notice is granted in part. Defendants are entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.