[Civ. No. 38495. Second Dist., Div. Five. Sept. 3, 1971.]

LOIS R., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
COUNTY OF LOS ANGELES et al., Real Parties in Interest.

**COUNSEL**

Michael A. Fischer, Ronald L. Sievers, Valerie Vanaman, Richard A. Weiss and Ernest Aubry for Petitioner.

John D. Maharg, County Counsel, and Douglas C. Miller, Deputy County Counsel, for Respondent and for Real Parties in Interest.

**OPINION**

**REPPY, J.**—On May 18, 1971, Referee Benjamin Louie conducted a hearing on a petition filed by the Los Angeles County Department of Public Social Services (the Department) under Welfare and Institutions Code section 600, subdivision (a),[1] to adjudge Vicki Lee R., the child of Lois R., a dependent child of the court.[2] No member of the Department or attorney representing the Department was present in court, but a Los Angeles County deputy probation officer was there. Lois R. was present with her attorney. The first witness in support of the petition, Phillip H. Perkins, was called to the stand. The record does not indicate by whom. Presumably it was by the probation officer since the record reveals it was she who called the Department's second witness. After Mr. Perkins was sworn and before any questioning began, counsel for Lois R. objected to the referee's asking the questions and structuring the case for the Department. The timing of this move suggests that there was an existing practice, of which counsel was aware, among referees of taking over this aspect of juvenile court hearings. Referee Louie overruled the objection and then asked the probation officer if she would like him to ask the questions. She replied affirmatively. Referee Louie interrogated Mr. Perkins, and, after cross-examination by counsel for Lois R., conducted a brief redirect examination. He also questioned a second witness

---

[1]Section 600 provides in part as follows: "Any person under the age of 21 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court: (a) Who is in need of proper and effective parental care or control and has no parent and guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control."

Hereinafter, all statutory references are to the Welfare and Institutions Code.

[2]The petition alleged that the "[m]inor has no parent or guardian actually exercising proper and effective parental care and control, and is in need of such care and control, in that: minor resides in the home of her mother, and since the school year, beginning September 14, 1970, minor has been absent 75 of 124 schools days without legal cause."

called by the probation officer in support of the petition.[3] Referee Louie conducted the cross-examination of Lois R.'s witnesses. Throughout the proceeding he made objections to questions asked and ruled on objections and motions made by Lois R.'s counsel. After the presentation of evidence, Referee Louie found the petition true, declared Vicki Lee R. to be a dependent child under section 600, subdivision (a), and set the date for a disposition hearing.[4] Lois R. (now to be designated petitioner) has petitioned this court for a writ of prohibition to restrain the respondent juvenile court from taking any further action, including the conducting of a disposition hearing.[5]

■    By examining the Department's witnesses, cross-examining those of petitioner, and making objections to testimony of petitioner's witnesses, Referee Louie virtually presented the Department's case and countered petitioner's case. Although some formality and use of adversary procedures is expected where the proceedings are, as here, contested,[6] Referee Louie's course of action apparently is sanctioned by the Welfare and Institutions Code, which provides that the court[7] is to control the proceedings during the hearing[8] and that the role of the probation officer, who is to be present in court, is to furnish the juvenile court such information and assistance as it may require.[9] The duties of the probation officer in section 600 cases have

---

[3]Both witnesses were school officials who testified as custodians of school records relating to Vicki Lee R.'s absences from school.

[4]Section 702 provides for a bifurcated hearing in section 600 proceedings. (Compare *In re Biggs*, 17 Cal.App.3d 337, 343-345 [94 Cal.Rptr. 519] and *In re D.J.B.*, 18 Cal.App.3d 782, 785-786 [96 Cal.Rptr. 146].)

[5]Respondent and real parties in interest contend that prohibition is an improper remedy because there was an adequate remedy by appeal. However, the absence of another proper remedy was conclusively determined by this court when we granted an alternative writ. (*Musicians Union, Local No. 6* v. *Superior Court*, 69 Cal.2d 695, 700, fn. 2 [73 Cal.Rptr. 201, 447 P.2d 313]; *City of Los Angeles* v. *Superior Court*, 51 Cal.2d 423, 429 [333 P.2d 745]; *Hagan* v. *Superior Court*, 53 Cal.2d 498, 501-502, and fn. 1 [2 Cal.Rptr. 288, 348 P.2d 896]; 3 Witkin, Cal. Procedure (1954) Extraordinary Writs, § 31, pp. 2501, 2503-2504.)

[6]Section 680, quoted in footnote 8.

[7]The referee is granted "the same powers as a judge of the juvenile court" in the hearing of cases by section 554.

[8]Section 680 provides as follows: "The judge of the juvenile court shall control all proceedings during the hearings with a view to the expeditious and effective ascertainment of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought. Except where there is a contested issue of fact or law, the proceedings shall be conducted in an informal nonadversary atmosphere with a view to obtaining the maximum cooperation of the minor upon whose behalf the petition is brought and all persons interested in his welfare with such provisions as the court may make for the disposition and care of such minor."

[9]Section 581 provides in part as follows (1971 Supp.): "Except where waived by the probation officer, judge or referee and the minor, the probation officer shall be

been delegated to the Department pursuant to section 576.5 by a November 12, 1968, minute order of the Los Angeles County Board of Supervisors. (Minutes, vol. 914, pp. 431-434 at p. 434, Syn. 107.) We need not decide whether, in view of this delegation, the probation officer was authorized to act as the representative of the county in these proceedings.

However, if the type of conduct indulged in by Referee Louie is authorized by statute, we find that it nevertheless violates a parent's rights to due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

The procedure employed here was condemned in a criminal law context in *Ruiz* v. *Delgado,* 359 F.2d 718. In that case, pursuant to statute, the judge of the United States District Court for the District of Puerto Rico, called and conducted direct and redirect examination of the commonwealth's witnesses, cross-examined defendant's witnesses, and then decided the case. Holding that such a procedure violated due process of law, the court stated: "Speaking from long contact with many trial judges, we appreciate that the public spirited and thoroughly impartial judge does not want innocent men to be convicted. Nor, however, does he want the guilty to go free. If a defendant has counsel, and particularly if he has effective counsel, and the people have none, it would be a rare judge who did not, at least unconsciously, seek to set the balance. While he may not be the ardent, striving, advocate that the Commonwealth's brief envisages as a public prosecutor, [footnote omitted] if he has to see that justice is done for the people's cause, he must, to some extent at least, act as prosecutor.

"Under the procedure in the Puerto Rico District Court the judge must alternate roles in rapid succession, or even assume both at once. Thus, when interrogating a witness he is examining for the people, but when listening to the answer to the question he has propounded, he is weighing it as judge, and at the same time considering what question, as prosecutor, to ask next. Correspondingly, when he listens to the answer to a question put by the defense, he must, as judge, impartially evaluate the answer, but, simultaneously, as prosecutor he must prepare the next question for cross-examination. The mental attitudes of the judge and prosecutor are at considerable variance. To keep these two personalities entirely distinct seems an almost impossible burden for even the most dedicated and fair-minded of men." (P. 720.)

---

present in court to represent the interests of each person who is the subject of a petition to declare such person to be a ward or dependent child upon all hearings or rehearings of his case, and shall furnish to the court such information and assistance as the court may require. If so ordered, he shall take charge of such person before and after any hearing or rehearing."

The *Ruiz* court found support in *In re Murchison,* 349 U.S. 133 [99 L.Ed. 942, 75 S.Ct. 623].[10] In that case the United States Supreme Court held that for the judge who had charged witnesses with contempt while conducting a "one man grand jury" to preside over the contempt trial violated due process. The court stated: "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. . . . '[E]very procedure which would offer a possible temptation to the average man as judge . . . not to hold the balance nice, clear and true between the State and the accused denies the latter due process of law.' [Citation.] Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' [Citation.]" (P. 136 [99 L.Ed. p. 946].) (See also *Mayberry* v. *Pennsylvania,* 400 U.S. 455 [27 L.Ed.2d 532, 91 S.Ct. 499].)

*Ruiz* and *Murchison,* of course, involved due process in criminal trials, whereas dependency proceedings are civil and have been conducted without strict adherence to all the formalities of a criminal trial. (*In re Jones,* 34 Cal.App.2d 77, 82 [93 P.2d 185]; see also *In re Gault,* 387 U.S. 1, 17, text and fn. 22 [18 L.Ed.2d 527, 540, 87 S.Ct. 1428].) *In re Gault, supra,* which imposed stricter procedural requirements on juvenile proceedings, limited its holding to the situation there under consideration, proceedings by which a determination is made as to whether a juvenile is a delinquent as a result of alleged misconduct with the consequence that he may be committed to a state institution. (P. 13 [18 L.Ed.2d p. 538].) See also *In re Robinson,* 8 Cal.App.3d 783 [87 Cal.Rptr. 678], holding that the *Gault* requirement of appointed counsel in delinquency proceedings does not apply to dependency proceedings under section 600. ■ Delinquency proceedings are more akin to criminal trials than are dependency cases in that the minor is accused of misconduct and subject to the loss of his freedom, whereas section 600 cases have been likened to civil custody disputes with the state as *parens patriae.* (*In re Robinson, supra,* 8 Cal.

---

· [10]The court also found support in *Wong Yang Sung* v. *McGrath,* 339 U.S. 33 [94 L.Ed. 616, 70 S.Ct. 445]. The Supreme Court there held that the Administrative Procedure Act, with its requirements of separation of prosecuting and decision-making duties, applied to deportation proceedings, invalidating Immigration Service regulations providing for the presentation of government evidence and the interrogation and cross-examination of the alien and his witnesses by the presiding inspector; the court discussed at length the unfairness of commingling prosecutory and adjudicatory functions and indicated that the existing procedure might be in constitutional jeopardy. See, however, *Marcello* v. *Bonds,* 349 U.S. 302 [99 L.Ed. 1107, 75 S.Ct. 757].

App.3d 783, 786.) Thus there might be an inclination to hold that assumption by the juvenile hearing officer of a dual role should be precluded in juvenile cases involving delinquency but not dependency. However, we do not feel that the distinction should be made.

■ The United States Supreme Court's declaration that "the admonition to function in a 'parental' relationship is not an invitation to procedural arbitrariness" (*Kent* v. *United States,* 383 U.S. 541, 555 [16 L.Ed.2d 84, 94, 86 S.Ct. 1045]), although made in the context of a delinquency case, is also relevant to dependency proceedings.

In most dependency matters the focus is against the parent and the prospect faced is the drastic result of loss of his child. Although legal scholars may deemphasize the adversary nature of dependency proceedings and characterize the removal of the child from parental custody as nonpunitive action in the best interests of the child, most parents would view the loss of custody as dire punishment. ■ As indicated, the section 600 petition is in a sense brought against the parents to deprive them of a valued right. This point was made in *In re Raya,* 255 Cal.App.2d 260, 265 [63 Cal.Rptr. 252]: "[T]he statutory criterion of improper and ineffective parental care denotes a fairly extreme case. A dominant parental right to custody of the child pervades our law. . . . 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder' (*Prince* v. *Massachusetts,* 321 U.S. 158, 166 . . .). Thus before section 600, subdivision (a), authorizes the drastic step of judicial intervention, some threshold level of deficiency is demanded. Although a home environment may appear deficient when measured by dominant socioeconomic standards, interposition by the powerful arm of the public authorities may lead to worse alternatives. . . . California appellate decisions in wardship cases of the 'dependent child' variety demonstrate rather extreme cases of neglect, cruelty or continuing exposure to immorality."

■ The parental right to have children and to the custody of those children is included among the liberties protected by the due process clause. "The concept of personal liberties and fundamental human rights entitled to protection against overbroad intrusion or regulation by government is not limited to those expressly mentioned in either the Bill of Rights or elsewhere in the Constitution, but instead extends to basic values 'implicit in the concept of ordered liberty' [citation] and to 'the basic civil rights of man.' [Citation.] Among such basic liberties and rights not explicitly listed in the Constitution are the right 'to marry, establish a home and bring up children' [citation]; the right to educate one's children as one chooses [cita-

tions]; . . . and the right to privacy and to be let alone by the government in 'the private realm of family life.' [Citations.]" (*City of Carmel-By-The-Sea* v. *Young,* 2 Cal.3d 259, 266-267 [85 Cal.Rptr. 1, 466 P.2d 225]; see *Armstrong* v. *Manzo,* 380 U.S. 545 [14 L.Ed.2d 62, 85 S.Ct. 1187], holding that the termination of a father's parental rights by adoption proceedings without according him notice of hearing violated due process.)

█ Petitioner had a right to the custody of her child of which she could not be deprived without an essential ingredient of due process, to wit, a fair hearing. (See *In re Gault, supra,* 387 U.S. 1, 19, fn. 25 [18 L.Ed.2d 527, 541].) The procedure followed deviated from that which would insure such a fair hearing significantly enough to constitute a denial of due process.

"[I]t is not merely of some importance but is of fundamental importance that justice should not only be done, but should manifestly and undoubtedly be seen to be done." (Hewart, Lord, *Rex* v. *Sussex Justices* (1924) 1 K.B. 256, 259. See *In re Gault, supra,* at p. 26 [18 L.Ed.2d at p. 545]; *In re Murchison, supra,* 349 U.S. 133, 136 [99 L.Ed. 942, 946]; *Offutt* v. *United States,* 348 U.S. 11, 14 [99 L.Ed. 11, 16, 75 S.Ct. 11]; and *Wong Yang Sung* v. *McGrath, supra,* 339 U.S. 33, 42 [94 L.Ed. 616, 624], expressing the same concept.) It is not difficult to imagine the distress felt by a parent who finds the hoped for impartial arbiter virtually presenting the case for depriving him of custody. Statements in statutes and case law to the effect that the court is to serve as a benevolent parental figure interested only in the welfare of the child, even if known, would be of small comfort. There is necessarily a variation in the degree to which referees and judges can handle the mental gymnastics necessary to presenting and judging a case (described *supra*). Respondent suggests that the extent of intervention properly open to the court should be left to its discretion, that an abuse of discretion in any individual case can be corrected on appeal, and that no abuse existed here. However, as stated in *Ruiz* v. *Delgado, supra,* 359 F.2d 718, at page 722: "Unfortunately, the very nature of the unfairness complained of is such that it may not be visible on the face of the record, no matter how conscientiously the record is scrutinized by the appellate court. The judge's failure to fulfill his optimum judicial duty cannot be measured either by the form of the questioning, or by the adequacy of the evidence."

We are not suggesting that the juvenile court will not have the prerogative properly granted to trial judges of questioning witnesses to clarify pertinent matters or even of calling some witnesses. (See Evid. Code, § 775; *People* v. *Rigney,* 55 Cal.2d 236 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186]; *People* v. *Corrigan,* 48 Cal.2d 551 [310 P.2d 953]; Witkin, Cal.

Evidence (2d ed. 1966) Introduction of Evidence at Trial, §§ 1105-1107, pp. 1021-1024.) However, at the very onset of a hearing, a referee cannot know what will develop during a hearing, and should not feel free to present the county's case as a matter of course.[11] ■ Where the petition is contested, the parents are entitled to a fair hearing with an impartial arbiter, both in fact and in reality, and that means the provision of a referee who does not assume the functions of advocate.

If the probation and social services departments feel that the existing abilities of their personnel are such that they will be at a disadvantage when faced with legal counsel representing a parent or child in juvenile proceedings, they would be well advised to train staff members in hearing techniques, or to make arrangements to have counsel. Perhaps the Legislature should consider the advisability of creating a staff of attorneys to assist in the presentation of such matters so as to insure the complete impartiality of the juvenile court and referee both actually and in appearance.

Referee Louie was named as a party respondent by the petition. ■ However, where the writ seeks to prohibit action by a tribunal, the respondent is the tribunal as such, not the judge or referee as a person. Accordingly, we have omitted his name from the title on this opinion and the petition as to him is dismissed. (*Lawson* v. *Superior Court,* 155 Cal.App.2d 755, 761 [318 P.2d 812].)

We grant the peremptory writ restraining respondent from taking further proceedings in the absence of a jurisdictional hearing conducted in accordance with this opinion.

Kaus, P. J., and Aiso, J., concurred.

---

[11]"Respondent's attempt to equate the District Court practice with the right of questioning afforded a . . . trial judge falls far short of the mark. The . . . judge replaces neither the prosecutor nor counsel for the defense, but at most, supplements both. . . . The Commonwealth's judge's intervention is not ancillary. It is fundamental, and continuous throughout the trial. Even more important, he is primarily motivated to speak only on one side." (*Ruiz* v. *Delgado, supra,* 359 F.2d 718, 720.)