Filed 6/24/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JESUS CASTANEDA, | B259950 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC500970) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| PERRIN BERNARD SUPOWITZ, INC., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING.  Petition for writ of mandate.  Rolf M. Treu, Judge. Petition granted and remanded.

Livingston Bakhtiar, Ebby S. Bakhtiar; Shegerian & Associates, Carney Shegerian for Petitioner.

No appearance for Respondent.

Ballard Rosenberg Golper & Savitt, Linda Miller Savitt, Christine T. Hoeffner and Philip Reznik for Real Party in Interest.

———————————

**INTRODUCTION**

In *Cho v. Superior Court* (1995) 39 Cal.App.4th 113 (*Cho*), the Court of Appeal held that when a judicial officer receives confidential information from a party while presiding over a settlement conference, and the judicial officer subsequently joins a law firm, that law firm may not represent an opposing party in the same action, regardless whether the law firm establishes screening procedures to prevent the former judicial officer from having any involvement with the case. As the court explained: "No amount of assurances or screening procedures, no 'cone of silence,' could ever convince the opposing party that the confidences would not be used to its disadvantage. When a litigant has bared its soul in confidential settlement conferences with a judicial officer, that litigant could not help but be horrified to find that the judicial officer has resigned to join the opposing law firm – which is now pressing or defending the lawsuit against that litigant. No one could have confidence in the integrity of a legal process in which this is permitted to occur without the parties' consent." (*Id*. at p. 125, fn. omitted.)

In this case, we hold the same standard applies when an attorney serves as a settlement officer in a mandatory settlement conference conducted by a judge and two volunteer attorneys. If the attorney receives confidential information from one of the parties to the action, that attorney's law firm may not subsequently agree to represent an opposing party in the same action, regardless of the efficacy of the screening procedures established by the law firm.

In this writ proceeding, the plaintiff challenges an order denying its motion to disqualify a law firm that substituted in to represent the defendant approximately six months after one of the law firm's attorneys served as a settlement officer in the case. The trial court ruled the law firm could represent the defendant because, even assuming the attorney received confidential information during the settlement conference – an issue the trial court did not resolve – the law firm had established adequate screening procedures to ensure the attorney did not discuss the case with anyone at the firm. We hold this was error. Because the trial court did not resolve the disputed factual question whether the attorney received confidential information while serving as a settlement

2

officer, we grant the petition and remand for further proceedings so the trial court can determine whether the attorney was privy to any confidential information.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2013, petitioner Jesus Castaneda filed this action for wrongful termination, violation of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) and related claims against his former employer, real party in interest Perrin Bernard Supowitz, Inc. (the employer).

In December 2013, and pursuant to rule 3.1380 of the California Rules of Court, the trial court ordered the parties to participate in the Los Angeles County Superior Court's CRASH settlement conference program for employment cases.[1] CRASH – which stands for Civil Referee Assisted Settlement Hearing – is a mandatory settlement conference program. Although the record contains no official documentation describing the mechanics of the CRASH program, the parties agree that three persons conduct a CRASH settlement conference – a judicial officer and two volunteer attorneys.[2]

The settlement conference took place at the end of January 2014. One of the two attorney panelists was Elsa Bañuelos, then senior counsel with the law firm of Ballard Rosenberg Golper & Savitt (the Ballard law firm).

The case did not settle. In late July 2014 – a little less than six months after the settlement conference – Ballard law firm partner Linda Miller Savitt substituted in to

---

[1]     All rule references are to the California Rules of Court.

[2]     The parties characterize the respective roles of these three persons differently. Castaneda asserts these three persons "preside" over the settlement conference, while the employer maintains the judicial officer presides over the settlement conference and is "assisted" by the two volunteer attorneys. This difference of characterization is in our view mainly semantic. In any event, it is not relevant to the issue before this court. As discussed below, the key question is whether the volunteer attorney received confidential information in connection with the court ordered and administered settlement conference, regardless whether one views the attorney as "presiding" over the conference or merely "assisting" the judicial officer.

3

represent the employer in the action. According to Savitt, she was unaware that Bañuelos had served as a settlement officer in the case.

About three weeks after the substitution of counsel was served, counsel for Castaneda, Ebby Bakhtiar, emailed Savitt, informed her of Bañuelos's involvement in the settlement conference, and inquired whether she and the Ballard law firm intended to withdraw as counsel for the employer. Savitt responded by email, noting that she "knew nothing about the case from [Bañuelos] and [Bañuelos] is not on the file and will not be doing any work on it. . . . We only have files from the client or from prior counsel." Savitt stated she did not intend to disqualify herself. Castaneda filed a motion to disqualify the Ballard law firm the following day.

According to the disqualification motion, during the settlement conference, "[Settlement Officer] Bañuelos received ex-parte confidences concerning the merits of Plaintiff's case, his trial strategy, legal analysis and other highly confidential appraisal and evaluations, which his attorney would not have divulged had it not been for the confidential setting of the conference." The motion was supported by declarations from two of Castaneda's attorneys. Ebby Bakhtiar stated in his declaration that he participated in the settlement conference telephonically. He claimed: "During the conference, I was called by the Judge in charge of the matter and placed on speaker phone. At that time, I was informed that the defense was not present and [was] asked questions about the case. Accordingly, I answered the questions and in so doing, I openly discussed Plaintiff's trial strategy, legal analysis, bottom-line settlement figures and revealed [rather] highly confidential evaluations I had made. When I engaged in the above discussions with the CRASH panel, I spoke candidly about the strengths and weaknesses of Plaintiff's case, divulging important information in confidence. I would not have disclosed any such information had it not been for the confidential nature of the conference." Bakhtiar did not specify who was present at the conference or who informed him the defense was not present when he allegedly disclosed confidences during the telephone conference.

The second attorney declaration in support of the disqualification motion was from David Harris who, in contrast to Bakhtiar, was physically present at the conference.

4

Harris stated in his declaration: "During the conference, I was introduced to the panelists, one of whom was Elsa Bañuelos. The conference lasted several hours, during which I answered questions about the case directed to me by the panelists, including Bañuelos, while outside of the presence of defense counsel. In so doing, I freely discussed Plaintiff's trial strategy, legal analysis and revealed other highly confidential evaluations [that] I, Mr. Bakhtiar and Mr. Shegerian [another of Castaneda's attorneys] had made. When I engaged in the above discussions with the CRASH panel, including Bañuelos, I spoke candidly about the strengths and weaknesses of Plaintiff's case, divulging important information in confidence. I would not have disclosed any such information had it not been for the confidential nature of the conference."

Harris also maintained that defense counsel were not present when the settlement panel conducted the telephone conference with Bakhtiar and that, during this conference, "Mr. Bakhtiar responded to the Judge's and panelists' questions about the case, providing his thoughts, his impressions, his evaluations and also discussed settlement figures, etc."

The employer opposed the motion. It argued that "no confidential information was conveyed to Ms. Bañuelos at the . . . settlement conference." The employer offered several declarations in support of this assertion. One was from Bañuelos, who stated that while she did "not recall details of the case," she remembered that the judge presiding over the conference was upset that Bakhtiar was not physically present. According to Bañuelos, the entire telephone conference with Bakhtiar took place in the presence of defense counsel and other employer representatives, and the judge specifically pointed this out to Bakhtiar. Bañuelos also maintained that, at no point during the conference did Bakhtiar or his associate who was physically present "disclose any weaknesses in Plaintiff's case or any other confidential information regarding the case; nor did they reveal any 'fall back' or 'bottom line' settlement position." Bañuelos acknowledged that after the discussion in the presence of the defense, the judge "took the call off of the speakerphone and left the room to speak separately with Mr. Bakhtiar, but I did not hear any of their conversation." Bañuelos did not expressly say whether the judge told her what he had discussed with Bakhtiar during their private telephone conversation.

5

The employer also offered the declaration of Howard Knee, its former counsel who represented it at the settlement conference. Knee also maintained that the judge advised Bakhtiar that defense counsel and other employer representatives were present and that, during the conference, he (Knee) responded at times to Bakhtiar's statements. In another declaration, the employer's Senior Human Resources Manager also stated that she, defense counsel, and other employer representatives were present during the telephone conference with Bakhtiar, and that the judge who presided over the conference alerted Bakhtiar to the presence of these persons.

The employer further argued that the Ballard law firm should not be vicariously disqualified from the representation because it had established an "ethical wall" barring Bañuelos from any involvement in the representation. It offered declarations from attorneys Savitt and Bañuelos, as well as from an associate working on the case with Savitt, reflecting that, after learning of Bañuelos's role as a settlement officer in the case, Savitt issued a memorandum to all attorneys in the firm admonishing them not to discuss the case or share any documents about the case with Bañuelos. In addition, Bañuelos declared that she had "not discussed any information received from plaintiff's counsel during the January 2014 CRASH settlement conference" with any Ballard law firm attorney, "except as necessary to respond" to the disqualification motion.

At the conclusion of a hearing in October 2014, the trial court issued an order in which it "conditionally granted" the disqualification motion. The order stated the court "presumes that Ms. Bañuelos has received confidential information as one of the panelists for the settlement conference and that Ms. Bañuelos's knowledge has been imputed to all members of [the Ballard law firm]." However, the court agreed to continue the matter to permit the employer to offer evidence in an attempt to rebut the presumption that the information conveyed to Bañuelos was conveyed to the law firm.

The employer filed a supplemental brief and offered additional declarations from Savitt and Bañuelos, as well as from the Ballard law firm associate working on the case and the employer's former counsel, but the additional declarations contained nothing new regarding events at the settlement conference or the law firm's efforts to ensure that

6

Bañuelos did not communicate about the case with anyone at the firm. Instead, the employer provided a declaration from the second volunteer attorney who had presided over the settlement conference and who stated that he did "not recall counsel for either party disclosing any confidential information" at the conference.

Before conducting a new hearing on the disqualification motion, the trial court issued a tentative decision denying the motion. The court emphasized that it was not resolving the parties' dispute whether Bañuelos had received confidential information during the settlement conference. Rather, it would presume Bañuelos had received such confidential information. Even with that presumption, however, the court intended to deny the disqualification motion on the basis that vicarious disqualification of the law firm was not required because of the screening put in place to prevent Bañuelos from disclosing any confidences to other persons at the firm.

After hearing argument from the parties, the court ruled the "tentative will stand." The court agreed to stay further proceedings for a limited time to afford Castaneda time to seek writ relief and a stay from this court.

A week later, Castaneda filed this writ petition challenging the trial court's ruling and seeking a stay of all trial court proceedings pending a final ruling on the petition. We issued a temporary stay and, after receiving preliminary briefing, we issued an alternative writ. We then received additional briefing and heard oral argument.

**DISCUSSION**

1.      **Propriety of Writ Review**

Although an order granting or denying a motion to disqualify counsel is immediately appealable (*Orange County Water Dist. v. The Arnold Engineering Co.* (2011) 196 Cal.App.4th 1110, 1116, fn. 2), we elected to consider the matter in the context of this writ proceeding to expedite resolution of the uncertainty regarding counsel's status. (See *Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 455; *State Water Resources Control Bd. v. Superior Court* (2002) 97 Cal.App.4th 907, 913-914.)

7

## 2.     Standard of Review

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion.  [Citations.]  If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence.  [Citations.]  When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion.  [Citation.]  However, the trial court's discretion is limited by the applicable legal principles.  [Citation.]  Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law.  [Citation.]"  (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143-1144 (*SpeeDee Oil*).)

In this case, it is only necessary for us to determine if the trial court applied the correct legal standard.  This presents a pure question of law subject to de novo review.  (*Orange County Water Dist. v. The Arnold Engineering Co.*, *supra,* 196 Cal.App.4th at p. 1116.)

## 3.     Vicarious Disqualification

When an attorney (either one who has participated in a judicial role or one who has not) is disqualified from a representation, the question arises as to whether that attorney's law firm is vicariously disqualified.  In other words, when an attorney has a conflict of interest that prohibits the attorney from accepting a representation, is the conflict imputed to the rest of the attorney's firm?  The answer, generally, is "yes." (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1139.)  "This rule safeguards clients' legitimate expectations that their attorneys will protect client confidences."  (*Ibid.*)  We therefore presume that attorneys in the same firm share access to privileged and confidential matters.  (*Id*. at p. 1153.)  The critical question in any case is whether that presumption is conclusive, or if it can be rebutted by the law firm's implementation of screening

8

procedures to prevent shared access to the confidential information. This question is not always easily answered.

A.     The *Cho* Decision

In *Cho, supra*, 39 Cal.App.4th 113, the court considered a situation in which it ultimately concluded the presumption was conclusive. In that case, a judge presided over a case and conducted three settlement conferences, which did not result in a settlement. According to plaintiff's counsel, he disclosed confidential information to the judge during the settlement conferences. (*Id.* at p. 117.) Although the judge did not believe he learned anything confidential from plaintiff's counsel, he could not say for sure. (*Id.* at p. 118.)

While the case was still pending, the judge retired. Shortly thereafter, the law firm of Graham & James substituted in to represent the defendant in that case. At the time, the now retired judge was scheduled to join Graham & James in an "of counsel" capacity. When one of the firm's partners reviewed the court docket for the case, he discovered the judge had presided over the case. Before the judge began working for the firm, the firm decided to impose a "cone of silence" to ensure the judge would not be involved in the case in any way. A few weeks after the judge began working for the firm, counsel for the plaintiff learned the judge had joined the firm. Plaintiff then moved to disqualify the firm. (*Cho, supra,* 39 Cal.App.4th at pp. 116-117.)

There was no dispute that the retired judge himself could not be involved in the defense of the case. (*Cho, supra,* 39 Cal.App.4th at p. 119.) The issue was whether the entire firm was vicariously disqualified. The trial court denied the disqualification motion, concluding that vicarious disqualification was not mandatory, and that the firm had implemented sufficient screening procedures. (*Id*. at p. 118.)

After the trial court denied the disqualification motion, the Court of Appeal granted writ relief. The trial court had made no express finding on the disputed issue of whether the judge had actually received confidences from plaintiff during the settlement conference (*Cho, supra,* 39 Cal.App.4th at p. 119); the Court of Appeal proceeded on the assumption that the judge had been privy to such confidences (*id*. at p. 121). The

9

appellate court summarized the issue and its holding as follows: "The issue in this case is whether a law firm must be disqualified as counsel in a lawsuit after employing the retired judge who had presided over the action and had received ex parte confidences from the opposing party in the course of settlement conferences. We conclude that *screening procedures are not sufficient to preserve public trust in the justice system in these circumstances* and therefore the firm must be disqualified." (*Id*. at p. 116, italics added.) As the italicized language reflects, the adequacy of the screening procedures was not the issue. The issue was one of public trust in the justice system.

Indeed, the court emphasized the importance of preserving not only the integrity of the judicial process, but also the public's confidence in that process. The court explained: "No amount of assurances or screening procedures, no 'cone of silence,' could ever convince the opposing party that the confidences would not be used to its disadvantage. When a litigant has bared its soul in confidential settlement conferences with a judicial officer, that litigant could not help but be horrified to find that the judicial officer has resigned to join the opposing law firm – which is now pressing or defending the lawsuit against that litigant. No one could have confidence in the integrity of a legal process in which this is permitted to occur without the parties' consent." (*Cho, supra,* 39 Cal.App.4th at p. 125, fn. omitted; see also *id.* at p. 126 [referring to the need "to ensure public trust in the judicial system"].)

The Court of Appeal emphasized that the key to its decision was the fact that confidences were disclosed to the judicial officer. The fact the judge had presided over the case did not, in and of itself, warrant disqualification of the law firm. (See *Cho, supra,* 39 Cal.App.4th at pp. 119-121.) What mattered was that the judicial officer had presided over settlement conferences that included ex parte communications, which justified a presumption of the revelation of confidences. (*Id*. at p. 125.)

The Supreme Court denied review in *Cho*, and no California court has questioned its holding. The employer argues that *Cho* is factually and legally distinguishable.

10

B.    *Cho* is Not Factually Distinguishable

The employer argues that *Cho* is distinguishable on the basis that Bañuelos is "a lawyer (not a judge) [who] volunteer[ed] for only three hours in a CRASH settlement conference, shared no information about the conference with her law firm, and violated no rules of ethics."[3]  Similarly, the employer asserts that "[m]issing from this case are any facts reflecting the significant power, control, and exposure to ex parte communications wielded by the judge in *Cho*, including his control over the entire action and multiple settlement conferences while he was the assigned judge."

Preliminarily, we observe that the fact the settlement judge in *Cho* also presided over the adjudicative aspects of the case was irrelevant to that court's decision.  Indeed, as discussed above, the court in *Cho* confirmed that the rule of automatic vicarious disqualification would *not* apply if the case involved a judge who had served only as an adjudicator and therefore had not received confidences.  (*Cho, supra,* 39 Cal.App.4th at p. 125.)

That there was only one settlement conference session in this case as opposed to three sessions in *Cho*, or that Bañuelos volunteered for only three hours, are also irrelevant distinctions.  The issue is qualitative, not quantitative – did Bañuelos serve as a settlement officer where confidences were disclosed in ex parte communications?

Ultimately, the employer's effort to distinguish this case factually boils down to a contention that *Cho* should not apply because Bañuelos is an attorney and not a judicial officer.  In our opinion, this difference does not warrant a different result.  It is difficult to characterize the precise legal capacity in which Bañuelos participated in the CRASH conference.  Prior to her involvement with CRASH, Bañuelos received a memorandum from the court setting forth guidelines for CRASH volunteers.  The guidelines stated that

---

[3]    There is nothing to suggest that the judge in *Cho* violated any ethical rules or did anything improper, or that he shared confidences with the law firm he joined.  On the contrary, the Court of Appeal in *Cho* noted:  "We emphasize that there is no basis for criticism of Judge Younger, and we imply none."  (*Cho, supra*, 39 Cal.App.4th at p. 125, fn. 4.)

CRASH volunteers were not temporary judges. The memorandum further stated that, as the settlement conference was ordered under rule 3.1380, it was not a mediation to which the formal mediation privilege of the Evidence Code (Evid. Code, § 1119) applied. The guidelines did not, however, identify the legal capacity in which CRASH volunteers would, in fact, be serving. It is possible that Bañuelos served as a referee.[4]

The California Code of Judicial Ethics has two canons that apply to lawyers acting as referees. Canon 6D(11) provides that "[a] lawyer who has been a temporary judge, referee, or court-appointed arbitrator in a matter shall not accept any representation relating to the matter without the informed written consent of all parties." Canon 6D(12) provides, "[w]hen by reason of serving as a temporary judge, referee, or court-appointed arbitrator in a matter, he or she has received confidential information from a party, the person shall not, without the informed written consent of the party, accept employment in another matter in which the confidential information is material." It is significant that both canons exist. The first prohibits the lawyer/referee from accepting any representation in the same matter without written consent *regardless of whether any confidential information* was conveyed; the second prohibits the lawyer/referee from accepting even *related* representation without written consent when confidential information has been disclosed. Together, these canons protect both interests implicated in *Cho* – the interest in judicial integrity and the interest in preserving client confidences – and applies those protections when the judicial officer was an attorney acting in a quasi-judicial capacity. In other words, these canons confirm that there is no line of demarcation to be drawn between judicial officers and attorneys who may assist them in

---

**4** We note that "CRASH" stands for Civil *Referee* Assisted Settlement Hearing. (Italics added.) The judicial officer who presided over the hearing was not a referee, but a regularly assigned judge; if any referees were involved, they must have been the two volunteer attorneys assisting the process.

12

settlement conferences. What matters is the judicial role being played, and the policy interests implicated.[5]

Together with a judge and another attorney, Bañuelos presided over a mandatory settlement conference that was conducted under the auspices of the court. The Court of Appeal in *Cho* was correctly concerned with the need to preserve the public's trust and confidence in the judicial process. The concerns expressed in *Cho* regarding the need "to preserve public trust in the justice system" and "confidence in the integrity of a legal process" are the same, regardless whether Bañuelos was a judge, commissioner, judge pro tem, referee, or volunteer attorney, as long as she was presiding in a court sponsored settlement program and was privy to ex parte communications.

In this case, as in *Cho*, the issue is not merely whether confidences will in fact be preserved. If it were, screening might be sufficient. But the issue is also whether participants in the judicial process have confidence in that process.

In at least one respect, the facts of this case present a *more* compelling case for vicarious disqualification of the law firm than the facts in *Cho*. In *Cho*, the judge who presided over the settlement conference joined the law firm after it had begun its representation of a party to the action, albeit only a short time thereafter. (See *Cho, supra*, 139 Cal.App.4th at p. 117.) Even though it is understandable a judge may leave the bench and join a firm that is already representing a party to an action in which the judge may have presided, the court in *Cho* noted that the opposing party "could not help but be horrified to find that the judicial officer has resigned to join the opposing law firm . . . ." (*Id*. at p. 125.) Here, Bañuelos did not join a firm that was already representing the employer. Rather, she was already employed by the law firm when the settlement conference took place. Under this scenario, we easily imagine the horror a litigant would feel when her firm substituted in to represent the opposing party.

---

[5]     We do not mean to imply that Bañuelos was necessarily acting as a referee when she served as a CRASH volunteer or that these particular canons of judicial ethics necessarily govern her conduct. We simply conclude that the judge/attorney distinction is blurred when the attorney is acting as a neutral in a court-ordered settlement program.

Nothing we have said should be construed as questioning the integrity of Bañuelos or the Ballard law firm and its attorneys. There is nothing in the record to suggest that Bañuelos or the firm or other attorneys did anything improper. But when it comes to public confidence in the judicial system, we are concerned not only with preventing improper conduct, but also with perceptions. " '[It] is not merely of some importance but is of fundamental importance that justice should not only be done, but *should manifestly and undoubtedly be seen to be done*.' " (*Lois R. v. Superior Court* (1971) 19 Cal.App.3d 895, 902, quoting *Hewart, Lord, Rex v. Sussex Justices* (1924) 1 K.B. 256, 259, original brackets, italics added; see also *People v. Pride* (1992) 3 Cal.4th 195, 272 [" 'justice must satisfy the appearance of justice' " (quoting *Offutt v. United States* (1954) 348 U.S. 11, 14)]; Cal. Code of Jud. Ethics, canon 2 ["A judge should avoid impropriety and the appearance of impropriety in all the judge's activities."].)

In our view, any factual differences between *Cho* and this case are insufficient to warrant a different result.

### C.  *Cho* is Not Legally Distinguishable

The employer next argues that *Cho* is distinguishable in that it presents an outdated view of the law of vicarious attorney disqualification. To properly address employer's argument, it is necessary to discuss the timing of the *Cho* opinion in the context of the development of the law of vicarious disqualification in California. *Cho* was resolved temporally between two Supreme Court cases, which, in dicta, mentioned the issue of vicarious disqualification. In 1994, one year before *Cho,* the Supreme Court suggested that automatic vicarious disqualification was, in fact, the governing rule in all cases in California. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 (*Flatt*).) Five years later, the Supreme Court, again in dicta, made it clear that whether vicarious disqualification was mandatory in all cases was, in fact, an issue it had not yet decided. (*SpeeDee Oil, supra,* 20 Cal.4th at p. 151.) Although *Cho* was resolved in the interim, *Cho* did not cite the *Flatt* dicta and assume that vicarious disqualification was mandatory; instead, *Cho* treated the issue of vicarious disqualification in the circumstances raised as a

14

question of first impression (*Cho, supra,* 39 Cal.App.4th at p. 119), which it resolved by considering the relevant ethical policy concerns we have described. (*Id.* at pp. 122-125.)

More than 10 years after *SpeeDee Oil,* the Supreme Court had still not spoken conclusively on whether vicarious disqualification was mandatory in all cases, or if, to the contrary, there was only a rebuttable presumption that could be overcome by proper ethical screening. The appellate courts had not been consistent. (See *Kirk v. First American Title Insurance Co.* (2010) 183 Cal.App.4th 776, 799-800 (*Kirk*).) Division Three of this District attempted to bring clarity to the issue, by concluding that the proper approach was not to speculate on what the Supreme Court might decide but instead to apply the state of the law as it existed without regard to the *Flatt* and *SpeeDee Oil* dicta. (*Kirk,* at p. 800.) That law could be described as a two-part rule: First, a case-by-case analysis on whether ethical screening would be permissible based on the circumstances present in the case and the policy interests implicated; and second, an exception providing that vicarious disqualification is *mandatory* in cases of a tainted attorney possessing actual confidential information from a representation, who switches sides in the same case.[6] (*Ibid.*)

In this case, the employer overlooks the second part of the rule discussed in *Kirk*, and argues, based on only the first part, that law firms are never automatically vicariously disqualified and that, instead, the presumption is rebuttable in all cases. We disagree; the second part of the rule is necessary because no ethical wall could overcome the imputation of shared knowledge when an attorney who formerly represented – and therefore possessed confidential information regarding – a party switched sides in the *same* case. (*Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 115, 117 (*Henriksen*).) As discussed, the rule of *Cho* is necessary for the same reasons.

The employer also argues that the facts of *Kirk* – in which the Court of Appeal ultimately allowed for rebuttal of the presumption by a sufficient ethical wall – are much

---

**6** Of course, *Cho* was also part of the law of vicarious disqualification that developed separately from the *Flatt* and *SpeeDee Oil* dicta. Nothing in *Kirk* – which did not discuss *Cho* – silently rejects *Cho.*

more egregious than the circumstances raised by Bañuelos's presumed receipt of confidential information in this case. We disagree. *Kirk* involved the defense of an insurance company in four related class actions. The insurance company was represented by a small team of attorneys who had represented it in 80 class actions, and had an extraordinary amount of knowledge related to the insurance company and its defense of litigation. (*Kirk, supra,* 183 Cal.App.4th at p. 785.) The defense team had already incurred over $5 million in attorney's fees defending the four class actions at issue when the disqualification motion arose. (*Id.* at p. 786.) The disqualification motion was brought because, one year earlier, plaintiffs' counsel had a 17-minute telephone conversation with an outside attorney plaintiffs' counsel unsuccessfully hoped to retain as a consultant in the class actions. During this conversation, some confidential information was disclosed to the potential consultant. (*Ibid.*) Later, the potential consultant moved to the San Francisco office of a national law firm. The next month, the insurance company's existing defense team moved from their old firm to the same national law firm, although in the Los Angeles and St. Louis offices. (*Id.* at p. 787.) Essentially, plaintiffs sought to disqualify the insurance company's long-held and valued defense team on the basis that the team had joined a different office of the same firm as an attorney to whom plaintiffs had voluntarily disclosed confidential information in a 17-minute telephone call a year earlier.

The present case, in contrast, involves an attorney participating in a mandatory settlement conference in which she may have been privy to confidential information about a plaintiff's case, whose firm then took on the defense of the same action. There is no long-term relationship between the employer and the Ballard law firm and no coincidental movement of both Bañuelos and the employer's long-term counsel to different offices of the same law firm. Most importantly, the context in which Castaneda's counsel would have disclosed confidential information to Bañuelos was a court-ordered settlement conference in which participation was mandatory, not a voluntary phone call from Castaneda's counsel seeking to employ Bañuelos.

16

The employer also relies on *In re County of Los Angeles* (9th Cir. 2000) 223 F.3d 990, which predated *Kirk.* Specifically, the Ninth Circuit considered the California Supreme Court's dicta in *SpeeDee Oil* as signaling that the court "may well adopt a more flexible approach to vicarious disqualification." Therefore the court allowed ethical screening in the case before it. (*County of Los Angeles,* at p. 995.) The case involved a former judicial officer whose firm sought to represent a plaintiff even though the judicial officer had possessed confidential information from settlement negotiations in a *different, but similar* case involving the same defendants. (*Id*. at pp. 995-997.) We conclude *County of Los Angeles* is not persuasive as applied to this case for several reasons. First, we find it unnecessary to speculate about future Supreme Court holdings on vicarious disqualification. Second, the Ninth Circuit lacked the benefit of *Kirk*'s development of the law. Third, we agree with the Ninth Circuit that *County of Los Angeles* and *Cho* are distinguishable. In *County of Los Angeles*, the court held that an ethical wall was reasonable because the information the judicial officer had received came in a different – although related – case from the one in which his new firm became attorney of record. Our case, like *Cho*, involves the Ballard firm representing a client in the same case in which Bañuelos served as a settlement officer.[7]

In sum, *Kirk* did not undermine *Cho*, and the circumstances of this case are much more in line with *Cho* than *Kirk.*

D.      The Employer's Other Arguments Are Unpersuasive

The employer raises several other arguments in order to avoid the application of *Cho* to this case and to the rule of vicarious disqualification. We are not persuaded. First, the employer points out the parties were engaged in a settlement conference, not mediation. It then argues the Rules of Court (specifically rule 3.1380, governing

---

[7]      Because the present case involves representation in the same, not related, litigation, we have no occasion to announce a rule under California law as to whether an ethical wall is appropriate in litigation that is only related.

17

mandatory settlement conferences) and Evidence Code (specifically section 1117, governing mediation confidentiality) draw a distinction between settlement conferences and mediations, such that settlement conferences are not subject to the mediation confidentiality provisions. This may be so. But we are not concerned with the laws of mediation confidentiality as set forth in the Evidence Code, but the law of attorney disqualification based on confidential communications, wherever they may occur.[8]

Second, the employer suggests that, since settlement conferences are to be distinguished from mediation, participants in CRASH settlement conferences can have no expectation of confidentiality, even with respect to ex parte communications. We disagree. An expectation of confidentiality can arise whenever a communication is made with promises that it will, in fact, be kept in confidence. Indeed, the employer conceded that CRASH settlement officers had been provided with a memo which stated, "You should assume that all caucus sessions were in confidence . . . ."

Third, the employer argued before the trial court that a rule of automatic vicarious disqualification will chill attorneys from donating their time to assist with valuable court programs such as CRASH. Although the argument was not expressly repeated on appeal, we believe that regardless of that chilling effect, it is necessary to prohibit law firms from handling litigation where a member of the firm has received the opponent's confidential information as a settlement officer in a court sponsored program. Parties should be encouraged to disclose confidences in ex parte communications to assist the settlement officers in reaching an equitable resolution of the case without fear that those confidences could be used against them in that very case by law partners of any of the settlement officers. Attorneys should be free to openly and honestly discuss the strengths and weaknesses of their cases with the settlement officers without fear that settlement

---

[8]    That the mediation-settlement conference distinction has no legal significance is underscored by the Ballard law firm's own uncertainty as to how to characterize the CRASH hearing. Bañuelos's declaration in opposition to the disqualification motion stated that she was a "settlement officer" at "the mediation." The Ballard law firm's internal memo establishing the ethical wall stated that Bañuelos had served "on a mediation panel as part of the Superior Court's CRASH settlement program."

18

officers' firms may use confidential information against them. We think it highly unlikely that our decision will discourage attorneys from volunteering their time for CRASH; if anything, our result will preserve the value of CRASH. Without the protections provided by mandatory vicarious disqualification for settlement officers who are privy to confidential information, no party would disclose such confidential information in settlement discussions, thus undermining the program's likely success.

     E.     <u>The Matter Must Be Remanded for the Trial Court to Determine if Bañuelos Was Privy to Confidential Information</u>.

The trial court expressly declined to resolve whether Bañuelos was privy to confidential information because the court believed an ethical screening wall could avoid vicarious disqualification. We have held otherwise. Accordingly, the matter must be remanded to the trial court to make a factual finding whether confidential information was provided to Bañuelos. We leave to the trial court's discretion whether to make that finding based on the existing evidentiary record or to request an additional showing by the parties.

*Cho* provides guidance on the factual determination the trial court must make. In *Cho*, the retired judge conceded he had conducted ex parte settlement discussions with each side separately. However, he stated he did not believe that he learned any confidential information from the plaintiff. (*Cho, supra,* 39 Cal.App.4th at pp. 117-118.) Plaintiff's counsel disagreed, stating that confidences had, in fact, been disclosed. (*Id*. at pp. 116-117.) The trial court did not make a finding on whether confidential information had actually been disclosed during the ex parte discussions. (*Id*. at pp. 118-119.) Although an available remedy would have been to remand for a determination of the nature of any confidential communication the judicial officer had received, the *Cho* court did not do that. Instead, the court stated, "Where a judicial officer has presided over settlement conferences which included ex parte communication, we presume the revelation of confidences relating to the merits of a litigant's case." (*Id*. at p. 125.) We agree with *Cho.* Once it has been shown that ex parte communications have occurred

19

with the settlement officer, it is then conclusively presumed that confidential information has been exchanged.

If on remand, the court finds that ex parte communications from Castaneda's counsel were conveyed to Bañuelos, the court shall conclusively presume confidences were exchanged and disqualify the Ballard law firm. No further inquiry into the content of the ex parte communications is necessary or appropriate.

If the court finds that Bañuelos did not engage in ex parte communications with Castaneda's representatives (either directly or by communication with the other attorneys or the judge who presided over the settlement conference), it shall reinstate its order denying disqualification of the Ballard law firm.

## DISPOSITION

The petition is granted. The respondent court is directed to (1) vacate its October 30, 2014 order denying petitioner's motion to disqualify the law firm of Ballard Rosenberg Golper & Savitt; and (2) schedule a hearing to reconsider the motion and make a factual finding on whether Bañuelos participated in ex parte communications with Castaneda's representatives. We express no opinion on the form of such hearing.

Petitioner is entitled to recover his costs in this writ proceeding. (Cal. Rules of Court, rule 8.493(1)(A).)


                                        RUBIN, ACTING P. J.

WE CONCUR:



        FLIER, J.



        GRIMES, J.


20