Filed 11/28/23  P. v. Moore CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SEAN DEMETRIUS MOORE,<br><br>    Defendant and Appellant. | A166871<br><br>(Solano County<br>Super. Ct. No. VC-37833) |

Defendant Sean Moore participated with Kevin Claiborne and another man in the 1994 killing of Paul Cousins.  The following year, a jury convicted Moore of first degree murder and first degree burglary and found true that he personally used a firearm during the crimes.  He was sentenced to 29 years to life in prison, and this division affirmed the judgment.  (*People v. Moore* (Jan. 28, 1997, A072567) [nonpub. opn.].)

In 2020, Moore filed a petition for relief under Penal Code former section 1170.95 (now § 1172.6).[1]  That statute was enacted as part of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which altered liability for felony murder and murder under the natural and probable

___

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.)  All further statutory references are to the Penal Code.

1

consequences doctrine. Under section 1172.6, eligible defendants may petition to have their murder convictions vacated and be resentenced.

After appointing counsel for Moore, the trial court concluded that he had made a prima facie showing of entitlement to relief. The court then held an evidentiary hearing at which it considered the court files of both Moore and Claiborne, including transcripts of their respective preliminary hearings and trials. After the prosecution conceded it could not prove that Moore was the actual killer and Moore conceded that he was a "major participant" in the burglary, the court concluded that he also "acted with reckless indifference to human life" and was thus liable for felony murder under amended section 189, subdivision (e)(3). As a result, the court denied his petition for relief.

On appeal, Moore claims only that the trial court applied an incorrect legal standard in determining that he acted with reckless indifference to human life. We disagree and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

A.      *The Proceedings Leading to Moore's Conviction for Murder*

Cousins was murdered in Vallejo in the early morning of July 19, 1994. There was evidence of a preexisting conflict between Cousins and Moore. A few weeks before the murder, Moore, who was a drug dealer, hit Cousins in the face during a drug-related dispute on the street. Cousins then "pull[ed] a gun out" and "cock[ed] it" before leaving.

On the night of July 18, several hours before the murder, Moore arrived at a gas station in a car driven by Claiborne, who also dealt drugs. A witness saw Moore exit the car and confront Cousins, who was also present, with a

2

"bat or stick of some type." After a short conversation with Cousins, Moore got back into the car and left.

Around 2:00 a.m. on July 19, Cousins arrived at the Kentucky Street home of an acquaintance. Cousins was "act[ing] really nervous and skittish" and "going from window to window" looking outside. Soon afterward, three men—Moore, Claiborne, and someone identified only as "JoJo"—also entered the house.[2] All three men had guns.

The three men approached Cousins and pointed their guns at him. Cousins repeatedly asked them not to kill him and stated "that he was sorry" and "that he would pay them back," but the men did not say anything to him. Claiborne's uncle, who was also there, attempted to shield Cousins, but the three men pushed the uncle aside and "wrestl[ed] with [Cousins] . . . , trying to get him down."

Two shots were then fired, one of which hit Cousins in his head, killing him. Eyewitness testimony differed as to who fired each shot. One witness, the girlfriend of Claiborne's uncle, testified that Moore fired the first shot at Cousins's buttocks. Another witness also testified that Moore fired the first shot but claimed that Moore aimed at Cousins's head or upper body. Finally, the acquaintance who lived in the Kentucky Street house did not see who fired the first shot but testified that Moore and JoJo left after it was fired, at which point Claiborne shot Cousins in the head.

Moore was charged with one count of murder and one count of first degree burglary, and it was alleged in connection with both counts that he

---

[2] Moore, who testified in his own defense, admitted that he sold drugs and had once hit Cousins, but he denied that he was at the Kentucky Street house on the night in question or that he was otherwise involved in Cousins's murder.

personally used a firearm.[3]  The jury was instructed that Moore could be found guilty of first degree murder on the theory that it was willful, deliberate, and premeditated or under the natural and probable consequences doctrine.  The theory of burglary on which the jury was instructed was that Moore entered the house "with the specific intent to commit a felonious assault."[4]

The jury convicted Moore of both charges and found the firearm allegations true.  The trial court sentenced him to 29 years to life in prison, composed of a term of 25 years to life for the murder and four years for the accompanying firearm enhancement.  The sentence for the burglary was stayed.

### B.  The Proceedings on Moore's Resentencing Petition

Moore filed his petition for resentencing in June 2020.  In support of the petition, he alleged that he was convicted of first degree murder under the felony murder rule or the natural and probable consequences doctrine and could no longer be convicted of that crime under amended sections 188 and 189.  He also checked boxes indicating that he was not the actual killer and did not aid and abet the murder with intent to kill.

The trial court appointed counsel for Moore, and the prosecution filed a short response stating that he was ineligible for relief because he was the

---

[3] The charges were brought under sections 187, subdivision (a) (murder), and 459 (burglary), and the firearm allegations were made under section 12022.5.

[4] When ruling on the resentencing petition, the trial court apparently had the jury instructions before it.  But they are not part of the record provided, which is also missing several other documents submitted below.  Nor do the trial transcripts before us include the reading of the jury instructions.  Instead, we rely on the transcript of the conference on jury instructions to discern how the jury was instructed.

4

actual killer.  Moore submitted trial transcripts showing that the jury was instructed on the natural and probable consequences doctrine and "there was testimony that another man actually killed the decedent."  The prosecution then filed an opposition brief in which it again argued that Moore was the actual killer, but that even if he was not, "he was either an aider and abettor [who] acted with an intent to kill or, at the very least," was liable for felony murder because he "was a major participant in the underlying felony and he acted with reckless disregard to human life."

In March 2021, after several continuances, the trial court concluded that Moore had made a prima facie showing of eligibility for relief entitling him to an evidentiary hearing.  The matter was continued numerous other times, in part for a missing trial transcript to be found, and the evidentiary hearing did not occur until December 2022.  The court considered the preliminary hearing transcripts, trial transcripts, and court files for both Moore and Claiborne, and no live witness testimony was presented.

At the hearing's outset, the prosecutor conceded that "the evidence is equivocal on who actually fired the shot that killed the victim" and abandoned its position that Moore was the actual killer.  The prosecutor argued that there was nonetheless proof beyond a reasonable doubt that Moore was a major participant in the underlying felony and acted with reckless indifference to human life.  Moore's counsel then conceded that Moore was a major participant in the burglary, meaning the only issue the trial court needed to decide was whether Moore acted with reckless indifference to human life.

The trial court concluded that Moore was not entitled to relief and denied the resentencing petition.  In explaining its reasoning, the court focused on the significance of the evidence that Moore "fle[d] after the gun

5

[was] fired" by Claiborne. The court stated that it might have reached a different conclusion had Moore "started fleeing when the gun was drawn, before it was fired, . . . [o]r if he hadn't fled and rendered aid after the shot had been fired." In the court's view, however, the fact that Moore "fle[d] after a shot [was] fired" did not constitute "evidence of a lack of culpability. People flee after the deed is done [when] looking to avoid capture." Indeed, if anything, Moore's flight weighed against him, because "[t]he lack of rendering aid . . . in and of itself . . . denot[ed] indifference to a life that [was] at risk."

After the trial court acknowledged the need for greater scrutiny of a defendant's liability for murder given "the changes in the criminal justice system," it concluded, "Having said that, I think when multiple guys go into a house with a gun, that by definition makes you a major participant and by definition is conduct that is obviously reckless disregard for human life. It's those circumstances that I think loom large in the analysis."

## II.
### DISCUSSION

### A. *Senate Bill No. 1437 and Felony Murder Under Current Law*

"Effective January 1, 2019, the Legislature passed Senate Bill [No.] 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.] In addition to substantively amending sections 188 and 189 . . . , Senate Bill [No.] 1437 added section 1170.95 [now section 1172.6], which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959.)

6

To pursue relief under section 1172.6, a petitioner "file[s] a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts." (§ 1172.6, subd. (a).) If, as here, the trial court concludes that the petition states a prima facie case for relief, the court must then "hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

For purposes of this appeal, it is uncontested that Moore is not entitled to relief if the trial court properly concluded that he is guilty of felony murder under current law.[5] Murder "committed in the perpetration of, or attempt to

---

[5] When Moore was tried, a defendant could not be convicted of first degree felony murder based on a burglary committed with intent to commit felony assault on the victim. (*People v. Wilson* (1969) 1 Cal.3d 431, 440, overruled by *People v. Farley* (2009) 46 Cal.4th 1053, 1117.) Under current law, however, a defendant can be convicted of felony murder based on such a burglary as the underlying felony. (*Farley*, at pp. 1113, 1117; *People v. Baker* (2021) 10 Cal.5th 1044, 1106.) Moore does not raise any claim related to this change in the law.

7

perpetrate, . . . burglary . . . is murder of the first degree." (§ 189, subd. (a).) Originally, aiders and abettors of an underlying felony were "held ' "strictly responsible for any killing committed by a cofelon, whether intentional, negligent, or accidental, during the perpetration or attempted perpetration of the felony." ' " (*In re Taylor* (2019) 34 Cal.App.5th 543, 550 (*Taylor*).) Senate Bill No. 1437 amended section 189 to provide that a defendant who was not the actual killer or did not have an intent to kill is not liable for felony murder unless the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); *People v. Strong* (2022) 13 Cal.5th 698, 703 (*Strong*).) "This provision repurposes preexisting law governing felony-murder special-circumstance findings—the findings a jury makes in felony-murder cases to determine whether the defendant may be sentenced to death or life without [the] possibility of parole [under section 190.2, subdivision (d)]—to define eligibility for sentencing relief" under section 1172.6. (*Strong*, at p. 703.) In other words, only defendants who are also death eligible under section 190.2, subdivision (d), may now be convicted of felony murder in the first place.

Section 190.2, subdivision (d), "was designed to codify the holding of *Tison v. Arizona* (1987) 481 U.S. 137, which articulates the constitutional limits on executing felony murderers who did not personally kill. *Tison* and a prior decision on which it is based, *Enmund v. Florida* (1982) 458 U.S. 782, collectively place conduct on a spectrum, with felony-murder participants eligible for death only when their involvement is substantial and they demonstrate a reckless indifference to the grave risk of death created by their actions." (*People v. Banks* (2015) 61 Cal.4th 788, 794 (*Banks*).) *Banks* and a follow-up decision, *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), "explain[ed]

8

what it means for an aiding and abetting defendant to be a 'major participant' who acted with a 'reckless indifference to human life.' " (*In re Miller* (2017) 14 Cal.App.5th 960, 964.) Based on the conclusion that section 190.2, subdivision (d), " 'must be accorded the same meaning' as the principle discussed in *Tison* and *Enmund* and 'must be given the same interpretation irrespective of whether the defendant is subsequently sentenced to death or life imprisonment without parole,' " *Banks* and *Clark* elucidated a number of factors to be considered in determining whether, under the totality of the circumstances, a defendant was a major participant in the underlying felony who acted with reckless indifference to human life. (*Taylor, supra*, 34 Cal.App.5th at pp. 551–553.)

B. *The Trial Court Did Not Err in Evaluating Whether Moore Acted with Reckless Indifference to Human Life.*

Generally, "[w]hile the superior court acts as an independent fact finder in determining whether the People have met their burden" to establish a defendant is not entitled to resentencing under section 1172.6, "on appeal, the reviewing court applies the substantial evidence standard to the superior court's findings." (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) Here, however, Moore does not claim that insufficient evidence supports the determination that he acted with reckless indifference to human life. Rather, he claims that the court applied an incorrect legal standard in reaching that determination. This presents a question of law that we review de novo. (See *Castaneda v. Superior Court* (2015) 237 Cal.App.4th 1434, 1443.)

In *Banks*, the Supreme Court was primarily focused on the "major participant" element, but the decision established the general proposition that a defendant's knowing participation in a robbery with others who are armed is insufficient, without more, to prove that the defendant acted with reckless indifference to human life. (*Strong, supra*, 13 Cal.5th at p. 706;

9

*Banks*, *supra*, 61 Cal.4th at pp. 808–810.) *Banks* concluded that "[a]wareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient," because a defendant must "knowingly create[e] a 'grave risk of death' " through the defendant's "own actions." (*Banks*, at pp. 807–808.)

*Clark* discussed the "reckless indifference to human life" element in more detail, explaining that it "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of [the defendant's] actions." (*Clark*, *supra*, 63 Cal.4th at pp. 616–617.) "Reckless indifference to human life has a subjective and an objective element. [Citation.] As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and [the defendant] must consciously disregard 'the significant risk of death [the defendant's] actions create.' [Citations.] As to the objective element, ' "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the [defendant's] conduct and the circumstances known to [the defendant], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant's] situation." ' . . . Notably, 'the fact a participant in [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)

As *Banks* did for the "major participant" element, *Clark* "set out a nonexhaustive list of considerations relevant to [the reckless-indifference element], including use of or awareness of the presence of a weapon or weapons, physical presence at the scene and opportunity to restrain confederates or aid victims, the duration of the crime, knowledge of any

threat the confederates might represent, and efforts taken to minimize risks. [Citation.]  Because the major participant and reckless indifference elements often ' "significantly overlap" ' [citation], this list of factors also overlap[s] with those . . . identified in connection with the major participation inquiry in *Banks*." (*Strong*, *supra*, 13 Cal.5th at p. 706.)  Ultimately, a court must "analyze the totality of the circumstances to determine whether [a defendant] acted with reckless indifference to human life," and " ' "[n]o one of these [factors] is necessary, nor is any one of them necessarily sufficient." ' " (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677.)

Moore bases his claim of error on the trial court's statement that "when multiple guys go into a house with a gun, that . . . by definition is conduct that is obviously reckless disregard for human life."  He argues that under *Banks* and *Clark*, "being armed and knowing that others are armed" while committing a burglary "does not demonstrate 'a willingness to kill.' "  Thus, he claims, the court erred by relying on only those "two facts," the burglary and the presence of guns, to determine that the reckless-indifference element was met.  We are not persuaded.

To begin with, Moore was convicted of burglary on the theory that he entered the Kentucky Street house with an intent to commit felonious assault, not a theft-related crime.  *Banks* recognizes that mere participation in an armed *robbery* is insufficient to establish reckless indifference to human life, but we think the calculus is different when the intended crime requires use of "a deadly or dangerous weapon or force likely to produce great bodily injury." (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748.)  Moreover, unlike the *Banks* and *Clark* defendants, Moore himself was armed with a gun.  Indeed, he does not dispute that he *shot at Cousins*.  While "multiple guys go[ing] into a house with a gun" may not be enough to prove reckless

11

disregard for human life when the defendant is unarmed, *Banks* and *Clark* hardly establish that a defendant who arms himself to participate in a violent assault and then shoots the victim has not "knowingly creating a 'grave risk of death' " through his "own actions." (*Banks*, *supra*, 61 Cal.4th at pp. 807–808.) Read in context, the court's statement does not suggest that it misapplied these cases.

In any case, the premise of Moore's claim fails because the trial court relied on more than the fact that Moore knowingly participated in an armed burglary. In arguing below that Moore did not act with reckless disregard for human life, defense counsel focused on the fact that Moore left as soon as Claiborne shot Cousins. Counsel contended that this showed the shooting "was a surprise" to Moore, because he expected that Cousins would only "get roughed up and pistol whipped" but not killed. In turn, the court's explanation of its ruling focused on the significance of Moore's behavior after Claiborne shot Cousins. The court determined that Moore's immediate flight did not show "a lack of culpability" and, to the contrary, his failure to render aid demonstrated indifference to whether Cousins lived or died. Although a defendant's post-killing actions "betraying an indifference to the loss of life" are insufficient, standing alone, to establish reckless indifference to human life (*Taylor*, *supra*, 34 Cal.App.5th at pp. 546–547), Moore does not identify any authority to suggest the same is true when such later conduct occurs after one has armed oneself to participate in a felonious assault.

In short, Moore fails to demonstrate that the trial court misapplied governing law in concluding that he acted with reckless indifference to human life. As a result, the court did not err by denying his petition for resentencing.

12

### III.
### DISPOSITION

The December 9, 2022 order denying Moore's petition for resentencing under former section 1170.95 is affirmed.

_____

Humes, P.J.


WE CONCUR:


_____

Margulies, J.


_____

Getty, J.*



*Judge of the Superior Court of the County of Solano, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

_People v. Moore_  A166871


14